## Case No. 15,856.

### UNITED STATES v. NASH et al.

[4 Cliff. 107.] [1]

Circuit Court, D. Massachusetts. May Term, 1869.

CUSTOMS DUTIES — TENDER — WAIVER — WEIGHTS — PRINCIPAL MARKETS — TEAS.

1. Under § 18, 13 Stat. 216, teas imported from London were subject to a duty of 25 cents per pound, and also 20 per cent ad valorem.

2. Certain importers of teas stated to a deputy collector of customs that they would make a tender of a certain amount of duties due on the same, and he told them they need not do so, as he would acknowledge the tender. *Held,* no tender, especially as none was pleaded.

3. A deputy collector of customs has no authority to make such a waiver.

4. When teas are bought in England for export, what is delivered as one hundred pounds

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

actually weighs more, and importers into this country reckon their profits with reference to the difference between the weight there and here. *Held,* that the customs officers here were not bound by the invoice weight.

5. Ad valorem duties, where they are required to be assessed on a given weight, must be so assessed on the actual weight when landed, as ascertained by the proper officer of the customs.

6. Appraisers determine the actual market value, or wholesale price, of the merchandise in the principal markets of the country from which the same were imported;. but they have no authority to determine the weight or quantity of the importation.

7. Appraisers must determine what are the principal markets of the country from which the goods were imported, in order to determine what was the actual market value or wholesale price there at the period of exportation; but their powers do not authorize them to extend their inquiries beyond what is necessary to enable them to appraise the value of the merchandise as required by law.

8. Although included in the invoice, goods lost on the voyage are not subject to duty.
[Cited in Balfour v. Sullivan, 17 Fed. 232. Distinguished in U. S. v. Bache, 8 C. C. A. 258, 59 Fed. 764.]

9. Where the United States weigher ascertained the exact weight of the teas, the collector was bound to adopt that quantity, and the value ascertained by the appraiser as the legal basis for the assessment of the duties.

The case was submitted on the following facts agreed: This was an action of assumpsit to recover the sum of $1,048.25 in coin, with interest from Dec. 4, 1865, the time when payment of said sum was demanded of the defendants [Nathaniel C. Nash, Spaulding & Co.] by the United States. The defendants imported into New York, per ship "Cella," from London, Sept. 20, 1865, a lot of teas, of different grades and prices, purchased by them and invoiced to them in London as 2.558 packages, 100,179 pounds, at a total cost of £8,030. 13s. 10d. The same were entered for consumption by the defendants at the port of New York, Sept. 20, 1865. The proper samples and the invoice were sent to the appraisers, who appraised the same and reported invoice value correct by writing on the back of the invoice the word "correct" and signing the same. The teas were then duly weighed by the United States weigher in New York, and he reported the weight to be 103,808 pounds avoirdupois. The estimated duty of 25 cents per pound on 100,179 pounds ($25,044.75) and 10% ad valorem on £8,030. 13s. 10d. ($38,869÷10=$3,886.90), being the number of pounds, and the value named in the invoice, amounting to $28,931.65, was paid by the defendants, and the teas were delivered to them, the United States not thereby waiving any claim for duties.

On the receipt of the reports of the appraisers and weigher, the collector of the port of New York assessed the duty and liquidated the entry, Dec. 4, 1865, as follows: 25 cents per lb. on 103,808 lbs., $25,952.00; less already paid (25 cents on 100,179 lbs.), $25,-044.75,—due, $907.25. Multiplying the value

per pound as stated in the invoice by the number of pounds reported by the weigher and the weight of the several packages, the collector estimated the value of the teas to be $40.279, on which he assessed a duty of 10%, $4,027.90; less amount already paid, $3,886.-90,—$141.00. And he claimed that there was due to the United States $1,048.25 in coin.

The defendants offered to pay the said sum of $907.25 in coin, and saw Mr. Hanscom, then the deputy-collector in New York, and said to him they had that amount of gold, which they admitted was due the United States, and would make the tender of it; to which he replied that they need not do that, as the government would acknowledge the tender, and that suit should be brought, merely to settle the matter in dispute. This sum the collector refused to receive. No money was paid into court.

The defendants duly protested, and appealed to the secretary of the treasury, whereupon the secretary affirmed the decision of the collector. This suit is brought to recover said $1,048.25.

The 2,558 packages imported and weighed at the custom-house were the same packages which the defendants purchased in London for the said sum of £8,030. 13s. 10d., and which they expected to receive, which the seller intended to deliver to them, and which were in fact delivered to them, as and for the weight and price in said invoice mentioned. The purchase was made at the actual market rate in London, and the invoice contained all charges and commissions that ought to be included, and there was no change in the market rate at London up to the time of shipment. The standard pound avoirdupois fixed by law in England and the United States is the same. The weighing at the custom-house gives the exact weight in pounds avoirdupois. Although the standard pound is the same in England as in America, by the general custom and usages of the exporting and importing trade, well known to merchants in the United States and in England, better weight is given in England than in America, so that what is bought for and delivered in England as one hundred pounds of tea weighs more than one hundred pounds exact weight, and it is in consequence of this customary and usual mode of weighing in England, that the weight of the tea in New York was found to be greater than the invoice weight, which is its weight in England. Purchases and sales are always made, and prices quoted and stated in England, with reference to the manner of weighing in England, and importers in the United States reckon their profits with reference to the difference between the English weight and the American weight. The court was to draw any inference which a jury would be authorized to draw, might hear and determine any facts it deemed material not herein agreed without the intervention of a jury, and might render such a judgment as the law requires. The teas were all goods,

wares, and merchandise of the growth and produce of countries east of the Cape of Good Hope, and were imported from a place west of the Cape of Good Hope.

W. A. Field, Asst. U. S. Atty.
J. J. Storrow, for defendants.

CLIFFORD, Circuit Justice. Merchandise of the growth or produce of countries east of the Cape of Good Hope, except raw cotton, was subject to a duty of 20 per cent. ad valorem, in addition to the duties imposed on any such articles when imported directly from the place or places of their growth or production. 13 Stat. 216, § 18. Id. 493, § 6. When imported directly from the country of their growth or production, teas were subject to a duty of 25 cents per pound. 13 Stat. 203, § 1. Imported as these teas were from London, they were subject to the duty of 25 cents per pound, and also to the duty of 20 per cent. ad valorem, because not imported directly from the country of their growth or production. The amount of duties is estimated on the number of pounds, and the value of the merchandise, as given in the invoice, was $28,931.65; and the defendants paid that amount, and the teas were delivered to them, the United States not thereby waiving any claims for any balance that might be due. Payment of the estimated amount of the duties does not affect the rights of the parties in this suit, nor does the delivery of the importation, as the payment and delivery were made with the understanding that neither party waived any of their legal rights. On receipt of the report of the appraisers and the weigher, the collector assessed the duties in conformity to those reports. Adjusted in that manner, the balance due, as specific duties, was $907.25, and the balance due for the ad valorem duties was $141.00, making in all the precise sum claimed by the plaintiffs in their writ and declaration.

The defendants admitted that the amount claimed, as the balance for the specific duties, was due to the plaintiffs, and offered to pay it; but the collector refused to receive payment of that sum unless the other sum claimed was paid at the same time. They stated to the deputy-collector that they had that amount of gold, and that they would make a tender of it, to which he replied, that they need not do that, as the government would acknowledge the tender. No other tender was made, and no money has been paid into court. Argument to show that the conversation between the defendants and the deputy-collector was not equivalent to a tender is unnecessary, as the statement of what occurred is sufficient to disprove any such theory. Authority to make such a waiver is not vested in the deputy-collector, and if it was, the conversation was too indefinite to amount to any such agreement. Apart, therefore, from the question as to the sufficiency of

the sum which the defendants offered to pay, it is quite clear that the conversation between them and the deputy-collector, cannot avail them as a tender, especially as no tender was pleaded, and no money was paid into court. Tender of the whole amount claimed is not pretended, and if it was, the proposition could not be adopted, as it would find no support in the evidence. Unable to make any satisfactory adjustment with the plaintiffs, the defendants protested against the action of the collector, and appealed to the secretary of the treasury, and the department affirmed the decision of the collector. They protested against the doings of the collector, upon the ground that the weight of the teas, as reported by the weigher, was excessive, and they now contend that the plaintiffs, under the circumstances of the case, were bound by the weight as expressed in the invoice.

Fraud is not imputed to the defendants in respect to the invoice. On the contrary, the parties agree that by the general custom and usage of the exporting and importing trade, well known to merchants engaged in the trade, better weight is given in England than in the United States, so what is bought for and delivered in England as one hundred pounds of tea, actually weighs more than one hundred pounds, and that it was in consequence of that custom and usual mode of weighing there, that the weight of the tea here was found to be greater than the invoice weight. Purchases and sales are always made, and prices are quoted and stated in England with reference to the manner of weighing in that country, and importers here, as the agreed statement shows, reckon their profits with reference to the difference between the weight there and in this country. But the standard pound avoirdupois is the same in both countries, and much of the difference in the result, as shown in this case, arose from the fact that the weigher here weighed a large number of the packages at one draft, instead of weighing each package separately, as the practice is in England. Some allowance is necessarily made for draft, in order to secure good weight; and the greater the number of the drafts, the greater must be the aggregate of the allowance, to secure that object. But ad valorem duties, where they are required to be assessed on a given weight, must be assessed upon the actual weight when landed, as ascertained by the proper officer of the customs. Appraisers determine the actual market value or wholesale price of the merchandise, in the principal markets of the country from which the same was imported; but they have no authority to determine the weight or quantity of the importation. They must determine what are the principal markets of the country from which the goods were imported, in order to determine what was the actual market value or wholesale price there at the period of exportation; but their powers do not authorize them to extend their inquiries beyond what is

necessary to enable them to appraise the value of the merchandise as required by law. Stairs v. Peaslee, 18 How. [59 U. S.] 521; Marriott v. Brune, 9 How. [50 U. S.] 619; U. S. v. Southmayd, Id. 637; Lawrence v. Caswell, 13 How. [54 U. S.] 488; Belcher v. Linn, 24 How. [65 U. S.] 508. Goods lost on the voyage are not subject to duty, although included in the invoice; and goods imported are subject, though not included in the invoice.

Guided by these rules, it is clear that the court must give judgment for the plaintiffs, as the parties agree that the United States weigher ascertained the exact weight of the teas. Such being the case, the collector was bound to adopt that quantity, and the value ascertained by the appraisers, as the legal basis for the assessment of the duties.

Judgment for the plaintiffs, with interest and costs.