BALFOUR and others *v.* SULLIVAN, Collector.

*(Circuit Court, D. California.* April 16, 1883.)

1. DUTIES—SHRINKAGE IN WEIGHT.

Where a cargo of coke, imported from Wales, by reason of evaporation of the moisture contained in it during the voyage, weighed several tons less than when shipped, *held,* that duties could only be legally collected on the actual weight at the time of the importation, and not on the weight shown by the invoice.

2. REGULATION OF THE SECRETARY OF THE TREASURY.

A regulation of the secretary of the treasury, that duties shall be collected according to the invoice, unless the importer accounts, by proofs, for the discrepancy between the amount shown by the invoice and the actual weight at the time of importation, is no defense to an action to recover the duties exacted from the importer on the difference between the amount actually imported and the amount shown by the invoice to have been shipped.

At Law.

*Charles Page,* for plaintiffs.

*Mr. Teare,* U. S. Atty., for defendant.

SAWYER, J. The plaintiffs, Balfour, Guthrie & Co., in January, 1882, imported into San Francisco, from Cardiff, Wales, a cargo of coke, which, upon its arrival and entry, was duly examined and weighed by the proper custom-house officers, and was found, and so reported, to actually weigh one thousand and ninety-nine tons, four centals, two quarters, and twenty-six pounds. The weight, as set forth in the invoice which accompanied the importation, was one thousand one hundred and forty-six tons and sixteen centals. The amount of duties payable on the weight shown by the invoice is one thousand one hundred and thirty dollars and fifty cents; while that payable according to the actual weight is one thousand and eighty-five dollars and fifty-nine cents,—making a difference of forty-four dollars and ninety-one cents. The collector demanded and collected the amount due according to the weight shown by the invoice, instead of the actual weight, which sum was paid by plaintiffs under protest, in order to obtain possession of the coke. The importers appealed to the secretary of the treasury, who affirmed the action of the collector; and this action is brought to recover the excess of forty-four dollars and ninety-one cents, so collected, on the ground that duties could only be legally collected upon the weight of the coke actually imported. Coke is a porous substance, subject to change in condition by increase of weight in a moist, and decrease in a dry, atmosphere. Article 532 of the regulations of the treasury department, adopted in 1874, is as follows:

"No allowance will be made in the estimate of duties for lost or missing articles or packages appearing on the invoice, unless shown, by proof satisfactory to the collector and naval officers, not to have been originally laden on board, or to have been lost or destroyed, by accident, during the voyage."

The proofs required by the foregoing regulation were not made by plaintiffs, they insisting that no proofs were requisite under the law other than the amount of coke actually imported into the United States.

The case does not appear to fall within the language of the regulation. There were no "articles or packages appearing on the invoice lost or missing," nor was it claimed that there were. The coke shown by the invoice was all "originally laden on the vessel," and none of it was lost or destroyed by accident during the voyage. So it was impossible to make the required proof, had it been necessary. Yet the whole amount of weight was not in fact imported. The diminution in weight is believed to have resulted from evaporation of moisture in the coke. In *Marriott* v. *Brune*, 9 How. 619, a case of importation of sugar which had lost largely, in weight by drainage, the duties on the invoice weight were collected; but the supreme court held that duties could only be collected on the weight actually received. Says the court:

"The general principle applicable to such a case would seem to be that revenue should be collected only from the quantity or weight which arrives here; that is, what is *imported*, for nothing is imported till it comes within the limits of a port. * * * As to imports, they therefore can cover nothing which is not actually brought into our limits. That is the whole amount which is entered at the custom-house; that is all which goes into the consumption of the country; that, and that alone, is what comes in competition with our domestic manufactures; and we are ι iable to see any principle of public policy which requires the words of the act of congress to be extended so as to embrace more. * * * A deduction must be made from the quantity shipped abroad, whenever it does not all reach the United States, or we shall, in truth, assess here what does not exist here. The collection of revenue on an article not existing, and never coming into the country, would be an anomaly, a mere fiction of law, and is not to be countenanced where not expressed in acts of congress, nor required to enforce just right.

"It is also the quantity actually received here by which alone the importer is benefited. It is all he can sell again to customers. It is all he can consume. It is all he can re-export for drawback." 9 How. 632; affirmed in *U. S.* v. *Southmayd*, Id. 646.

The same rule was upheld in regard to brandy, in *Lawrence* v. *Caswell*, 13 How. 488. So the weight of tea, as actually imported, was adopted as the proper basis for collecting duties, in *U. S.* v. *Nash*, 4 Cliff. 107. See, also, *Schuchardt* v. *Lawrence*, 3 Blatchf. 397.

But if the case is within the terms of the regulation, it is difficult to see where the secretary obtains authority to require what the statute does not. It is not enough that it affirmatively appears what amount of goods is actually brought into the United States, without showing *why* more was not imported. As was well said by counsel, "the *cause*, and not the *fact of non-importation*, is made the ground of relief from the impost to the merchant."

Duties are levied under the statute, and the decision of the supreme court construing the statute upon the amount of goods act-

tially imported; and when it is shown what amount is in fact actually imported, the importer certainly cannot be required, by regulations of the secretary, to show affirmatively why he did not import more, as a condition of being relieved from paying duties upon goods which it appears he did not in fact import. Some express authority should be shown for establishing such a burdensome rule. In many cases it would, doubtless, be impossible for the importer to show affirmatively what had become of his goods; and if it appears that they have not been imported, that should be sufficient. At all events, independent of some act of congress to the contrary, if an importer, under such a rule, adopted for the convenience of the department, is compelled to pay duties, against *his protest,* on goods never imported, the rule cannot avail as a defense to an action to recover the money thus wrongfully exacted. The only statute cited as justifying the regulation is section 251, Rev. St., which provides that the secretary of the treasury "shall prescribe forms of entries, oaths, bonds, and other papers and rules and regulations not *inconsistent with law,* to be used under and in execution and enforcement of the various provisions of the internal revenue laws, or in carrying out the provisions of law relating to raising revenue from imports, or to duties on imports." This certainly does not authorize the collection of duties on goods not in fact imported, unless the importer of goods shows affirmatively why he did not import more. Nor does it authorize a regulation which shall prevent an importer from recovering moneys illegally exacted from him on goods never imported. To thus adopt a rule by which duties are collected on goods not imported, when, under the statute, only duties on goods in fact imported are authorized to be collected, would be to adopt a regulation "inconsistent with the law." Section 2921 of the Revised Statutes expressly provides that "if, on the opening of any package, a deficiency of any article shall be found on examination by the appraisers, the same shall be certified to the collector on the invoice, and an allowance for the same shall be made in estimating the duties;" and section 2920 provides for weighing and measuring when there is a deficiency. The importer is not required by the statute to show why there is a deficiency, or how it occurred, as a condition of not paying duties on more goods than he has actually imported. He is entitled under the statute to the exoneration upon the fact of deficiency appearing. Other penalties are provided by law for certain cases. See *Gray* v. *Lawrence,* 3 Blatchf. 117. *Lennig* v. *Maxwell,* Id. 126. No other statute authorizing such a rule or the exaction of the duties sued for has been brought to the notice of the court.

I think plaintiffs entitled to recover the amount claimed, and judgment will be entered accordingly.