PASCAL and others *v.* SULLIVAN, Collector, etc.

(*Circuit Court, D. California.* September 1, 1884.)

1. TARIFF LAWS—REGULATIONS OF CUSTOMS OFFICES.
    The secretary of the treasury, with a view to facilitate the work of collectors of the port, may not make such regulations as would seem to negative existing laws.

2. SAME—IMPORTATION OF MINERAL WATERS—PROOF REQUIRED AS TO THEIR NATURE.
    Under the laws, the importation of natural mineral waters is permitted free of duty. Under these circumstances, an importer is not restricted to a certificate of the owner of the spring in showing the character of the waters imported.

At Law.

*Page & Eells,* for plaintiff.

*S. G. Hilborn,* U. S. Atty., for defendant.

SAWYER, J. This is an action to recover an excess of duties alleged to have been unlawfully exacted by the collector of the port of San Francisco on natural mineral waters imported into the United States. Plaintiffs imported 50 cases of mineral waters in bottles

from Liverpool, England. The waters are alleged to be "natural mineral waters," and the demurrer admits the allegation to be true. The appraisers examined the goods, and determined and reported them to be natural mineral waters. The collector refused to pass them as natural mineral waters, on the ground that the certificate of the owner or manager of the spring producing them, that they were such, did not accompany the invoice, which certificate the importers represented to the collector that it was impossible to obtain. The collector, acting under the regulations prescribed by the secretary of the treasury on April 9, 1879, refused to receive any other evidence than the prescribed certificate of the character of the waters, and demanded and collected duties upon them as *artificial* mineral waters, which duties are much higher than those on natural mineral waters, the latter being free, except as to duties collected on the bottles containing them. The regulation of the secretary under which the collector acted is as follows:

"Decision 2,973, dated September 18, 1876, requires that invoices of imported waters claimed to be natural mineral waters be accompanied by certificates from the shippers that the water embraced in such invoice is in fact natural mineral water, and specifying the spring from which produced. For the better protection of the revenue against the importation of artificial waters under the name of natural waters, the certificate above mentioned *will hereafter be made by the owner or manager of the spring, instead of the shipper, as heretofore.*"

The regulation is claimed by the United States to have been adopted under the authority of section 251, Rev. St., which provides that the secretary of the treasury "shall prescribe forms of entries, oaths, bonds, and *other papers,* and *rules and regulations not inconsistent with law,* to be used under and in the execution and enforcement of the various provisions of the internal revenue laws, or in carrying out the provisions of law relating to raising revenue from imports, or to duties on imports, or to warehousing; he shall give such directions to collectors, and prescribe such rules and forms to be observed by them, as may be necessary for the proper execution of the law."

The only question is whether, under this provision of the statute, the secretary was authorized to make the regulation, and, being made, whether the determination that the waters are artificial mineral waters, in consequence of the absence of the prescribed certificate, is now conclusive on the rights of the importer. That the secretary cannot impose restrictions not authorized by law, was held in *Morrill* v. *Jones,* 106 U. S. 466; S. C. 1 Sup. Ct. Rep. 423. So, also, in *Balfour* v. *Sullivan,* 8 Sawy. 648; S. C. 17 FED. REP. 231. In *Campbell* v. *U. S.* 107 U. S. 410, S. C. 2 Sup. Ct. Rep. 759, the supreme court very clearly intimate that the regulations made by the secretary, under the assumed authority granted to him, must be *reasonable,* and, if they are unreasonable, that they will be void, and should not be enforced by the courts. Says the court:

"It would be a curious thing to hold that congress, after clearly defining the right of the importer to receive drawback upon subsequent exportation of the imported article on which he had paid duty, had empowered the secre- tary, by regulations which might be proper to secure the government against fraud, to defeat totally the right which congress had granted. If the regu- lations of themselves worked such a result, no court would hesitate to hold them invalid, as being altogether unreasonable."

A regulation may, perhaps, be reasonable and proper, so far as the practical administration of the office of the collector is concerned, provided the determination made by the collector in pursuance of such regulation be not conclusive on the ultimate rights of the im- porter. In this case, for example, to guard against frauds and to facil- itate the due administration of the customs laws, it may, perhaps, be proper for the secretary of the treasury to require the prescribed cer- tificate of the owner or manager of the spring producing the water as the only *prima facie* evidence upon which the collector shall act, thereby putting the importer who declines or fails to furnish the cer- tificate to the inconvenience of correcting in the courts, where the means of ascertaining the truth are more efficient than any in the collector's office, any error resulting from his refusal or neglect to conform to the regulations for the government and convenient admin- istration of the affairs of the collector's office. But whether the secre- tary can prescribe rules as to the character and competency of evidence that shall be binding upon the courts, or that shall conclude the rights of the importer, and, in effect, ultimately and conclusively change the rate of duties fixed by congress upon articles which may be law- fully imported into the United States, is another question. While I am not prepared to say that the regulation in question is not a rea- sonable one for a proper, convenient, and speedy administration of the collector's office, I do not think it was intended, or, if it had been so intended, that it was in the power of the secretary, by means of it, to make the action of the collector under it ultimately conclusive upon the rights of the importer, or to thereby, in effect, change the rate of duties prescribed by the act of congress.

If such is intended to be the effect, the rule, it seems to me, would be wholly unreasonable and void on that ground. It would empower the collector, in the guise of a rule of evidence, to change the rate of duties established by the acts of congress. It would empower him to enact, as well as administer, laws. Natural mineral waters are au- thorized to be imported by the act of congress without any duty what- ever, except the duty required to be paid upon the bottles, as bottles, containing them. There is no other limit or restriction put upon the importation by the statute. Any one, so far as the statutes are con- cerned, may go into the open markets of the world, purchase natural mineral waters, and import them into the United States upon pay- ing the prescribed duties upon the bottles containing them. But it may be impossible to obtain the certificate of the owner or manager

of the spring producing the waters, after they have been bottled, left the spring, become an article of commerce, and scattered in the trade throughout the markets of Europe and the world. And this condition of things was represented to the collector by the importer to exist in respect to the mineral waters in question. The owner of the spring might absolutely refuse to make the certificate after the waters have left his spring, and gone, as articles of commerce, into the markets of the world. It would not be in the power of purchasers in the European markets to compel such a certificate, and, in such cases, it would be difficult to procure it from the owner, even if he were willing to furnish it.

Indeed, it would seem to be impracticable to furnish such certificate. How could the owner of the spring verify the character of the water, wherever it might be found in the markets of the world, and furnish a certificate to be appended to the invoice by any purchaser desiring to import it in larger or smaller quantities? To furnish a certificate to general purchasers, at the time of sale at the springs, to be appended to the invoices by purchasers in the general markets of the world for exportation, would be to intrust the whole matter to the exporter or shipper, and this, at best, would, in effect, be but the certificate of the party shipping, and appending it to the invoice at the time of exportation, rather than that of the owner of the spring.

To establish and adhere to the prescribed rule, as conclusive in the courts of the rights of the importer, would be to enable the owners of springs to prevent entirely the exportation to the United States of any of the waters of natural mineral springs by anybody, except such as should be bought for the purpose directly from themselves, except upon payment of the much higher rate of duties imposed by the statute on artificial mineral waters, thus discouraging the importation of the pure mineral waters, and encouraging that of cheaper and deleterious artificial compounds. Under such a rule any party might well afford to pay the owner of a valuable mineral spring a large bonus to secure a monopoly, upon his own terms, of the exportation of its waters to the United States. The law itself specifically permits the importation of natural mineral waters free of duty upon the waters, and it prescribes no exclusive kind of evidence as to the character of the waters. If the secretary of the treasury can provide by rule that only a certain class of evidence of the character of the mineral waters shall be received, and that the rule shall be binding upon the courts, as well as upon the collectors in the due administration of their offices, and be ultimately conclusive upon the rights of importers, then, by a mere instruction for the guidance of collectors, he can change the general law of the land as to the competency of evidence, and indirectly abrogate the statutes permitting the importation of natural mineral waters free of duty. To require a class of evidence which is not in the power of the importer of the natural mineral waters, purchased in the open markets

of the world, to produce, would be to put an insurmountable obstruction in the way of their importation, and, in effect, deny the right, to anybody but the owner of the spring, to import at all.

While the regulation may, perhaps, be a proper one (I am not prepared to hold that it is not) for the convenient administration of the customs laws by the collectors of ports, it would be, in my judgment, wholly unreasonable to make it conclusive upon the rights of the parties when they appeal to the courts of the country to recover the excess of duties in fact exacted and paid; and, in my judgment, no authority is vested in the secretary to give the regulation any such effect. To give it such effect would be to change the law of the land as to the competency of evidence, and the statutes prescribing the rate of duties that shall be collected. If the law of the land, in this instance, can be thus changed by an arbitrary rule adopted by the secretary of the treasury, I do not perceive why it might not in like manner be changed in any other particular relating to the administration of the treasury department.

The demurrer admits the truth of the allegation of the complaint that the waters in question are in fact natural mineral waters. That being so, the duties collected are in excess of the amount required by the statute, and the plaintiffs are entitled to recover the excess exacted and paid. The rule of the secretary can furnish no defense to the action.

The demurrer is overruled, with leave to answer on the usual terms in 30 days.