## REISS et al. v. MAGONE.

*(Circuit Court, S. D. New York. May 21, 1889.)*

1. **CUSTOMS DUTIES—ASSESSMENT—QUANTITY.**
   Duties are to be paid only upon the actual quantity of merchandise which is imported into this country and enters into its commerce, and not upon the original quantity thereof bought and shipped.

2. **SAME—INCREASED VALUE BY SHRINKAGE.**
   Where, however, an importation has shrunk in weight from evaporation or other like cause, and such shrinkage has added a percentage of value, so that the actual quantity thereof which arrives is in its then condition worth more per pound in the markets of the country from which it came than the original quantity thereof bought and shipped was worth per pound, the actual

quantity should in fairness be appraised at its increased value per pound, and duty assessed upon the value thereof so appraised, although the invoice describes the original quantity as worth less per pound.

**3. SAME.**

But, to warrant such an assessment of duty, the appraiser must first find that the actual quantity was worth per pound such a sum as would warrant the particular amount of duties assessed.

**4. SAME—CLASSIFICATION—SARDELLES.**

Since the passage of the tariff act of March 3, 1883, fish caught in foreign waters, salted or pickled, and imported in ankers of about 80 pounds or less, and not in barrels or half barrels, which have each a capacity, respectively, of about 200 and 100 pounds, which were generally bought and sold by the trade of this country dealing therein at and prior to March 3, 1883, under the denomination of "anchovies" or "sardines," are dutiable at the rate of 40 per centum *ad valorem* under the provision for "anchovies and sardines, when imported in any other form" than packed in oil or otherwise in tin boxes, contained in Schedule G of that act; but those that were then generally bought and sold by that trade under the denomination of "sardelles" are dutiable at 50 cents per hundred pounds, under the provision for "foreign-caught fish, imported otherwise than in barrels or half barrels, whether * * * salted or pickled, not specially enumerated or provided for in this act," contained in the same schedule.

At Law.,

The plaintiffs in 1886 imported from Amsterdam and Rotterdam certain fish, and in 1887 from Marseilles certain Castile-soap. The Castile-soap as invoiced was classified for duty at the rate of 20 per centum *ad valorem* under the provision for Castile-soap contained in Schedule A of the tariff act of March 3, 1883, (Heyl, New, 8.) Against the exaction of duty upon the Castile-soap as invoiced, the plaintiffs duly protested; claiming that duty should only be exacted thereon after making deduction or allowance for shortage of weight. The fish were invoiced as "sardelle," and were classified for duty at the rate of 40 per centum *ad valorem* as "anchovies," under the provision for "anchovies and sardines," "when imported in any other form" than packed in oil or otherwise, in tin boxes, etc., contained in Schedule G of the same tariff act, (Heyl, New, 281.) Against the classification of these fish as anchovies, and the exaction of duty thereon at the rate of 40 per centum *ad valorem*, the plaintiffs duly protested; claiming that these fish were dutiable at the rate of 50 cents per 100 pounds as "foreign-caught fish, imported otherwise than in barrels or half barrels, whether * * * salted or pickled, not specially enumerated or provided for in this act," under the provision therefor contained in the same schedule, (Heyl, New, 280.) Thereafter the plaintiffs duly appealed, and brought suit to recover the duty exacted on the difference betweeen the invoice quantity of the Castile-soap and the actual quantity thereof as landed, and on the difference between the duty at the rate of 40 per centum *ad valorem* exacted on the fish and duty at the rate of 50 cents per 100 pounds as claimed by them.

Upon the trial it appeared that the Castile-soap on the voyage of its importation from Marseilles to this country had shrunk in weight, by evaporation or other like cause, so that the actual quantity thereof landed, as returned by the government weigher, was less than the purchased quantity as invoiced and shipped at Marseilles; but that the appraiser had taken the value per pound at its invoice value, and that duty had been

exacted on the invoice, and shipped quantity at its invoice value per pound as entered by the plaintiffs, instead of on the actual quantity landed at its invoice value per pound, as claimed by them after the government weigher had made his return. But it did not appear that the foreign market value of the Castile-soap when landed had been so enhanced that there had been no diminution of the total entered value of the invoice thereof in the principal markets of the country from which it was imported, notwithstanding its shrinkage in weight. The evidence of the plaintiffs' witnesses tended to show, as to the fish in suit, that they are called in Holland "anjovis," and in Germany "sardellen;" that they are caught only off the coast of Holland, while anchovies are caught off the coasts of Norway, France, Italy, and other places in the Mediterranean sea; that the fish in suit are a different species of fish from anchovies as well as from sardines; that the fish in suit are thick and round and white, except when they are old, and then they are of a rusty color, and are imported into this country with their heads off, put up in brine made of salt and water, in wooden packages in the shape of barrels, called ankers, half, quarter, eighth, and tenth ankers; that ankers are of about 80 pounds capacity, or less, while a barrel and a half barrel are of about 200 and 100 pounds capacity, respectively; that anchovies are a flat fish, and in that respect, like sardines, have black backs, are smaller, shorter, and less fat than the fish in suit, and are imported into this country with the heads on, and generally put up in spices and vinegar or hops; that the fish in suit are of much more value than anchovies; that the fish in suit are almost entirely sold to the German trade in this country, and at and prior to the passage of the act of March 3, 1883, were generally bought and sold in this country under the denomination of "sardelles." The evidence of the defendant's witnesses, on the other hand, tended to show that the fish in suit were then and there generally bought and sold under the denomination of "anchovies." Both sides having rested, the defendant's counsel moved the court to direct the jury to find for the defendant as to the soap; citing section 2900, Rev. St. U. S., and article 604 of treasury regulations issued July 1, 1884, and *Kimball* v. *Collector*, 10 Wall. 436. The plaintiffs' counsel, in opposition, cited section 2921, Rev. St. U. S; *Marriott* v. *Brune,* 9 How. 619; *U. S.* v. *Southmayd,* Id. 637; *Lawrence* v. *Caswell,* 13 How. 488; and *Austin* v. *Peaslee,* 10 Month. Law Rep. (N. S.) 443; *Balfour* v. *Sullivan,* 8 Sawy. 648, 17 Fed. Rep. 231; and *Weaver* v. *Saltonstall,* 38 Fed. Rep. 493. This motion the court denied, and the plaintiffs' counsel thereupon moved the court to direct the jury to find in favor of the plaintiffs as to the soap.

*Albert Comstock* and *Everit Brown,* for plaintiffs.

*Stephen A. Walker,* U. S. Atty., and *Thomas Greenwood,* Asst. U. S. Atty., for defendant.

LACOMBE, J., (*orally.*) The importer has to pay duty only upon what he imports. If his importation weighs 100 pounds when it leaves the other side, and 80 pounds only when it comes here, he pays on the 80

pounds which enters into the commerce of this country, and not upon the 100 pounds he bought on the other side. It may happen, however, that the shrinkage in weight has added a percentage of value, and that the 80 pounds which arrives is in its then condition worth more per pound in the markets of the country from which it came than the original 100 pounds was worth per pound. To illustrate, there may be a difference in the foreign market between 80 per cent. soap and 60 per cent. soap. If what reaches this country is in fact 80 per cent. soap, it should in fairness be appraised at its value as 80 per cent. soap in the foreign markets at the time of exportation, although the invoice may describe it as 60 per cent. soap at a lower value. But of course duty should be assessed only upon the amount actually imported. Such a method of appraisement seems to be in accordance with the provisions of the statute. In order, however, to warrant such an assessment of duty, the appraiser must first find that the 80 pounds imported was worth per pound such a sum as would warrant the particular amount of duty assessed. In this case there is no evidence that the appraiser has so found, and, on the contrary, the evidence is that the per pound value of the article imported was the same as that stated in the invoice, which would make the per pound value of the 80 pounds no greater than the per pound value of the 100 pounds. In view of the state of the evidence, therefore, I shall, as to the soap, instruct the jury that their verdict must be for the plaintiffs.

The only question of fact for the jury, therefore, is whether the fish covered by the other entries are dutiable under the 280th or the 281st paragraph of the tariff act of 1883. These fish are caught in foreign waters. They are salted or pickled. They are imported here in ankers weighing about 80 pounds or less, and not in barrels, which weigh about 200 pounds, or in half barrels, which weigh 100 pounds. So far they are within the description of the 280th paragraph,—"foreign-caught fish, imported otherwise than in barrels or in half barrels, whether fresh, smoked, dried, salted, or pickled." That is where the plaintiffs claim that they should be classified, and they fall within that description, unless they are found specially enumerated or provided for elsewhere in the tariff act. The only other place where it is contended that they are specifically provided for is in the next paragraph, which lays a duty upon anchovies and sardines packed in oil or otherwise, and imported either in boxes or in any other form. The only question, then, for you to determine is whether or not these articles are anchovies or sardines. If you find them to be anchovies or sardines, your verdict must be for the defendant; otherwise your verdict must be for the plaintiffs. These tariff acts are intended, of course, for the community at large, and mainly for that part of the community which deal in the articles covered by the tariff acts. Therefore, in determining the meaning of the words used by congress, it is appropriate to go to the particular trade which handles the article and deals in it, and learn from those in that trade how the particular article is known in the trade and commerce of this country. For that reason witnesses in the trade have been called to the stand by the plaintiffs

and the defendant, and you have heard their evidence. Taking into consideration what they have told you with regard to the trade understanding touching these particular articles (Exhibit S–L) imported by the plaintiffs, it is for you to determine whether they are sardines or anchovies or not. If you find that they are sardines or anchovies, your verdict must be for the defendant; otherwise your verdict must be for the plaintiffs. Upon that question the burden of proof is upon the plaintiffs, for the case comes into court after a finding by the collector that they are sardines or anchovies, and that finding, which makes out a *prima facie* case, is to be overthrown by the plaintiffs by a fair preponderance of proof.

The jury rendered a verdict for the plaintiffs.