FREEDMAN & SLATER, INC. *v.* UNITED STATES

No. 7753.—

Entry Nos. 704314; 704313.

(Decided November 1, 1949)

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel); *Barnes, Richardson & Colburn* (*Hadley S. King* of counsel), and *Sharretts & Hillis* (*Howard C. Carter* of counsel), associate counsel; for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Daniel I. Auster, Samuel D. Spector*, and *Guy Gilbert Ribaudo*, special attorneys), for the defendant.

MOLLISON, Judge: These are appeals for reappraisement of two shipments of wet salted "frigorifico" sound bull hides exported from Argentina on July 7, 1944, and imported into the United States and entered on August 19, 1944. In each case the merchandise was entered at the invoice unit value of 78 Argentine pesos per 100 kilograms of weight, plus certain dutiable charges as invoiced, which charges are not in dispute. In reappraisement 171098–A the hides were appraised at 78 Argentine pesos per 100 kilograms, plus 6.46 per centum, plus the undisputed dutiable charges. In reappraisement 171699–A the hides were appraised at 78 Argentine pesos per 100 kilograms, plus 6.7778 per centum, plus the undisputed dutiable charges. It will be seen, therefore, that the difference between the entered values contended for by the plaintiff and the appraised values contended for by the defendant is the percentage advances, 6.46 per centum in one case, and 6.7778 per centum in the other.

On the summary sheet attached to each entry there is a notation that "Sec. 14.3 (e). C. R. 1943 applies." Section 14.3 of the Customs Regulations relates, according to the caption thereof, to "Appraisement of merchandise; determination of value," and subsection (e) reads as follows:

(e) When merchandise subject to an ad valorem rate of duty has decreased in weight by reason of evaporation or otherwise, and the value of the unit of quantity has correspondingly increased, such advance shall not be deemed an advance in value for the purpose of assessing additional duty.

As stated by counsel for the plaintiff in the brief filed in its behalf—

* * * it is obvious from an examination of the entry and accompanying papers that the amount added by the Appraiser in both instances was the result of a mathematical calculation to equal the amount lost by evaporation or otherwise between the time of shipment and the time of arrival in New York. The invoice weight on entry 704314 [reappraisement No. 171098–A] was 9,718 kilos or 21,424 lbs. The net landed weight as reported by the surveyor was 20,124 lbs. which is a difference of 1,300 lbs. or 6.46% of the net landed weight. On entry 704313 [reappraisement No. 171699–A] the shipping weight was 9,211 kilos or 20,307 lbs. The United States Weigher's report indicates a net landed weight of 19,108 lbs. or a difference of 1,289 lbs., which is 6.7778% of the net landed weight.

At this point it might be well to note that according to the record a "frigorifico" is a slaughterhouse in the Argentine primarily engaged in preparing frozen meat for export, and that a "frigorifico sound bull hide" is a hide taken from a bull slaughtered in a frigorifico and having a certain quality as standard as distinguished from "reject."

Preliminary to a discussion of the law as applied to the particular facts of this case, I deem it advisable to set forth some statements of the law as applied to appraisement and the assessment of duty generally which will make the situation in this case more completely understandable.

Merchandise is appraised at its unit value. *United States* v. *Kuttroff, Pickhardt & Co. (Inc.)*, 9 Ct. Cust. Appls. 239, T. D. 38204. The net weight of goods actually imported must be taken as the basis of the assessment of duties. *Downing & Co.* v. *United States*, 11 Ct. Cust. Appls. 310, T. D. 39128.

In the case of the hides at bar, the unit value of which was based upon 100 kilograms of weight, and which hides shrunk during the voyage of importation, it is apparent that if the value per unit upon arrival did not change from the value per unit which obtained in the foreign market at the time of exportation, the operation of the foregoing rules would decrease the *total* value of the merchandise (i. e., value per unit times number of units actually imported), and consequently decrease the amount of duty assessed. It was obviously to counteract this situation that section 14.3 (e), *supra*, and its predecessors have been included in the customs regulations, and the addi-

tions to the invoiced and entered value were made by the appraiser upon appraisement of the merchandise here involved.

Section 402 of the Tariff Act of 1930 sets up five bases of value, i. e., foreign value, export value, United States value, cost of production, and American selling price, and for the purposes of that act all imported merchandise is required to be valued upon one of such bases. While appraising officers are bound by the valuation statute, unfortunately no requirement has been laid upon them to make known by suitable notations on the official papers the basis of value found and adopted by them in any given case. Thus, in the case at bar, there is nothing in the official papers which would directly indicate upon what basis the appraiser appraised the hides.

However, counsel for the defendant stated (R. p. 18):

I will say that the appraised value represents both the foreign value and the export value of the merchandise.

Taking into consideration with the foregoing statement the fact that the appraisement was made in Argentine pesos, I believe I am justified in concluding that the value basis adopted by the appraiser was under section 402 (a) (1), reading as follows:

SEC. 402. VALUE.

(a) BASIS.—For the purposes of this Act the value of imported merchandise shall be—

(1) The foreign value or the export value, whichever is higher;

\* \* \* \* \* \* \*

and that the foreign and export values were the same.

Although stated in terms of 78 Argentine pesos, plus certain percentages, plus dutiable charges, the effect of the appraised value in the case of reappraisement No. 171098–A was that 83.038 Argentine pesos per 100 kilos, plus dutiable charges, and in the case of reappraisement No. 171699–A it was that 83.2866 Argentine pesos per 100 kilos, plus dutiable charges, were found by the appraiser to represent the market value or the price at the time of exportation of the merchandise at bar to the United States, at which such or similar merchandise was freely offered for sale for home consumption or for exportation to the United States to all purchasers in the principal markets of Argentina, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. See section 402 (c) and (d), Tariff Act of 1930, as amended.

The claim of the plaintiff is that 78 pesos per 100 kilos plus the dutiable charges represented the foregoing.

Now, of course, it must be remembered that the value statute refers to the value in the principal markets of the country of exportation of

merchandise such as or similar to that *imported*, and it might not be amiss to point out that it is not the value of the merchandise which was *exported* which is in question, but the value of the merchandise which was imported.

Neither party here, however, raises the point that the merchandise imported was not wet salted frigorifico sound bull hides; indeed, counsel so describe the merchandise in the briefs filed in behalf of the respective parties. Both by the testimonial record of witnesses who were familiar with the market in Argentina for wet salted frigorifico sound bull hides at the time of exportation of the merchandise here involved, and by affidavits of persons shown therein to be familiar with the sale of hides produced in Argentine frigorificos, plaintiff established that the price, at the time of exportation of the hides here involved, at which such hides were freely offered for sale either for home consumption or for exportation to the United States to all purchasers in the principal market of Argentina, in the usual whole-sale quantities and in the ordinary course of trade, was 78 Argentine pesos per 100 kilos, packed ready for delivery or for shipment to the United States, and, indeed, this evidence agrees with much of the evidence offered on behalf of the defendant. It was likewise established that the foregoing prices did not vary by reason of quantities offered or sold.

Both at the trial and in the brief filed, much was made by counsel for the defendant of the fact that in paying for the hides in question no allowance was made by reason of the shrinkage and payment was made in full at 78 pesos for the number of pounds shipped, and it is argued and inferred therefrom that the unit value of the hides increased. The record, however, indicates that full payment was made because the contract of purchase, a copy of which is in evidence as defendant's exhibit 1, called for payment to be based upon shipping weight, rather than upon received weight, and the record also shows that all purchases of such hides in Argentina were made on the basis of the weights found at the frigorifico, they being offered and quoted "ex frigorifico."

The weakness of defendant's position is that it sets up an entirely *fictitious* unit value in order to agree with an undisputed total price paid for the shipment. There is not the slightest indication anywhere in the record that hides such as those here involved were ever offered for sale or sold in Argentina at the appraised values. On the contrary, all of the evidence relating to market value in Argentina at the time of exportation of the hides in question supports the invoiced and entered value contended for by the plaintiff.

It is contended by counsel for the defendant in the brief filed that plaintiff did not establish that merchandise in the condition of that imported, i. e., shrunken hides, was offered for sale in Argentina.

This contention is contradicted by and inconsistent with the appraisement upon which defendant relies, for, being on the basis of foreign and export value, it presupposed the offer for sale in the foreign market of merchandise such as or similar to that here involved. Since the plaintiff herein challenged only the percentage advances of the appraisements, it was entitled to rely upon the presumption of correctness attaching to all other items of the appraisements, including the presumption that merchandise such as or similar to that imported was offered for sale in the country of exportation under the terms of the valuation statute. *United States* v. *Fritzsche Bros., Inc.*, 35 C. C. P. A. 60, C. A. D. 371. Moreover, the record shows that there was no allowance made in the foreign market on account of moisture content, nor was there any standard moisture content, nor did the price in the foreign market of wet salted frigorifico sound bull hides increase by reason of loss of weight due to evaporation or moisture or shrinkage.

The defendant's case is based upon the theory that although the total number of units of weight of hides received was less than the number which was shipped, the value of each unit increased sufficiently during the voyage of importation so that the total value of the shipment did not vary. This, however, does not conform with the facts. The record shows that at the time of exportation of the wet salted frigorifico sound bull hides here in question such hides were offered for sale and sold by weight in Argentina, the unit of weight being 100 kilograms, and that the price per unit was 78 Argentine pesos, as claimed by the plaintiff. There is nothing to show that because of their shrunken condition the unit value of the hides in question in Argentina at the time of exportation was greater than 78 Argentine pesos per 100 kilograms.

It is in this respect that the case at bar differs from those cited by counsel for the Government in its brief as supporting its theory herein, i. e., *American Sugar Refining Co.* v. *United States*, 181 U. S. 610, and *Sands & Leckie* v. *United States*, 10 Treas. Dec. 772, T. D. 26956. In each of those cases it was found that the diminution of weight by reason of evaporation or shrinkage was attended by a corresponding increase in the unit of value.

However, there are numerous cases, notably *Balfour et al.* v. *Sullivan*, 17 Fed. 231; *Weaver & Sterry, Limited* v. *Saltonstall*, 38 Fed. 493; *Reiss et al.* v. *Magone*, 39 Fed. 105; *Coroneos Bros.* v. *United States*, 30 Treas. Dec. 310, T. D. 36194; *N. S. Monachos et al.* v. *United States*, 31 Treas. Dec. 488, T. D. 36840, and *United States* v. *Fritzsche Bros., Inc.*, 35 C. C. P. A. 60, C. A. D. 371, cited by both the plaintiff and defendant in their briefs, wherein it appeared that the value of the unit of quantity of the involved merchandise had not correspondingly increased as the weight thereof decreased, and in

each of those cases no addition to the unit value on account of shrinkage or evaporation was made or permitted.

In the presentation of defendant's case its counsel offered in evidence a report of Customs Agent Henry A. Norman in the form of a letter addressed under date of February 11, 1949, to the supervising customs agent at New York. At the time of the offer objection to its admission was made by counsel for the plaintiff on the grounds of materiality, relevancy, and competency. The report was received in evidence as defendant's exhibit 5, subject to the motion of plaintiff's attorney to strike therefrom all matters which are incompetent, immaterial, or irrelevant, or otherwise objectionable. Counsel for the plaintiff submitted a written motion and memorandum in support thereof to strike out certain portions of the exhibit, and counsel for the defendant submitted a memorandum in opposition thereto. Decision on the motion was reserved until decision on the merits of the case should be made.

An examination of the report reveals that it relates largely to the situation found in buying and selling domestic hides, which is, of course, wholly irrelevant to the issues in the cases at bar. Insofar as it relates to loss of value and loss in leather content in the case of imported hides which have shrunk in transit, and to the particular shipments in issue, the report has reference only to the situation which obtains in the United States after the arrival of the hides. It does not purport to relate to the situation which obtains in the foreign market in connection with this subject. The motion of plaintiff's counsel to strike from defendant's exhibit 5 that portion commencing on page 1 with the words "MR. E. J. PRICE, Inspector-in-Chief, Hide Bureau" down to and including the third paragraph on page 10, the end of which paragraph reads as follows: "* * * properly cured and will not contain excessive moisture" is therefore granted, an exception to this ruling being allowed to the defendant.

In connection with the foregoing ruling, I wish to note that during the course of the trial counsel for the defendant sought to introduce other evidence concerning the value and leather content of hides such as those at bar *in relation to their use and disposition after importation.* In each instance the evidence offered was excluded upon the ground that such evidence was immaterial and irrelevant to the issues raised herein. Upon review of the record, I am satisfied that such rulings were correct, and they are consequently adhered to, as are the rulings denying the several motions of the defendant to transfer the case to Chicago, shown to have been for the purpose of securing oral evidence of the same nature.

Upon all of the evidence I find as facts:

1. That the merchandise involved in these appeals for reappraisement is wet salted frigorifico sound bull hides exported from Buenos

Aires, Argentina, on July 7, 1944, and entered in the United States on August 19, 1944.

2. That at the time of exportation of the hides in question Buenos Aires was the principal market in Argentina for the sale of such wet salted frigorifico sound bull hides both for home consumption in Argentina and for exportation to the United States.

3. That at the time of exportation of the hides in question the price at which such wet salted frigorifico sound bull hides were freely offered for sale and sold in the ordinary course of trade in Buenos Aires to all purchasers for home consumption in Argentina or for exportation to the United States, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed, ready for shipment to the United States, was 78 Argentine pesos per 100 kilograms, plus dutiable charges as invoiced in the shipments here involved.

4. That the price of such wet salted frigorifico sound bull hides did not vary in the foreign market by reason of differences in quantities.

5. That the price of such wet salted frigorifico sound bull hides did not increase in the foreign market by reason of loss in weight because of evaporation or shrinkage.

I conclude as matters of law:

1. That the foreign value of the hides at bar, as defined in section 402 (c) of the Tariff Act of 1930, as amended, and the export value of the merchandise, as defined in section 402 (d) of the same act, is the same.

2. That the proper basis for determining the value of this merchandise is such foreign or export value.

3. That such foreign or export value in each instance is the entered value.

Judgment will be rendered accordingly.