(Reap. Dec. 8274)

FREEDMAN & SLATER, INC. *v.* UNITED STATES

Entry Nos. 704314; 704313.

(Decided on remand [Abstract 56755] December 22, 1953)

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel); *Barnes, Richardson & Colburn* (*Hadley S. King* of counsel), and *Sharretts, Paley & Carter* (*Howard C. Carter* and *Amos Sharretts* of counsel), associate counsel; for the plaintiff.

*Warren E. Burger,* Assistant Attorney General (*Daniel I. Auster, Samuel D. Spector,* and *Guy Gilbert Ribaudo,* special attorneys), for the defendant.

MOLLISON, Judge: These appeals for reappraisement are before me on remand by the second division of this court (order of remand reported in 28 Cust. Ct. 503, Abstract 56755) for further proceedings consistent with the opinion of the Court of Customs and Patent Appeals in this case. The original opinion of the writer is reported in *Freedman & Slater, Inc.* v. *United States,* 23 Cust. Ct. 305, Reap. Dec. 7753; the opinion of the second division affirming the same (one judge dissenting) is reported in *United States* v. *Freedman & Slater, Inc.,* 26 Cust. Ct. 582, Reap. Dec. 7974; and the opinion of the Court of Customs and Patent appeals reversing the judgment of the appellate division and remanding the case to this court for further proceedings

is reported in *United States* v. *Freedman & Slater, Inc.*, 39 C. C. P. A. (Customs) 194, C. A. D. 486.

Believing that the state of the record up to the time of remand was adequately set forth in the three opinions cited, the writer will not repeat the facts therein recited. As the result of a pretrial conference and a trial at which oral and documentary evidence was offered and received, the following additional facts were established:

1. That the difference between the condition of the hides as exported and as imported is represented by a loss of weight due to shrinkage caused by evaporation of moisture or water.

2. That at the time of exportation of the hides in question, hides such as or similar thereto were always purchased and sold in the foreign market on the basis of frigorifico shipping weights and never purchased or sold on the basis of landed weights.

3. That although such or similar hides usually contained a "normal" amount of moisture or water content when shipped, there was at the time of exportation of the hides in question no standard moisture content for such or similar hides in the foreign market.

4. That it was usual and customary on the part of purchasers of such or similar hides from Argentina to anticipate a loss of weight during the voyage of importation due to shrinkage or evaporation of water of moisture content.

5. That the shrinkage or evaporation of water or moisture content during the voyage of importation in the case of the hides here in issue was within the range of the normal or usual shrinkage thus anticipated.

6. That such shrinkage does not result in a loss of material or hide substance.

7. That the desired element on the part of the purchaser of such hides was hide fiber, or material in the hide which could be tanned into leather.

8. That such shrinkage or evaporation of water or moisture content does not adversely affect the quantity or quality of the product to be obtained from the hide.

9. That such shrinkage or evaporation of water or moisture content does not increase the quality of the hides themselves.

10. That "the per pound price of such hides is mathematically higher when the hides are delivered in the United States."

11. That at the time of exportation of the hides in question the ceiling price established by United States law and/or regulations prescribed pursuant to such law which United States purchasers could pay for wet salted frigorifico sound bull hides was 78 Argentine pesos per 100 kilos based upon the frigorifico shipping weight, or the equivalent in United States currency, and that the offered price and basis of sale of the Argentine sellers conformed to this ceiling price.

With respect to certain of the foregoing facts, and certain other evidence adduced at the trial of the case on remand, the writer wishes to state that, in his view, the competency of some of the evidence, and its materiality and relevancy to the issues presented, were somewhat questionable. However, in the conduct of the pretrial conference and the trial pursuant to the remand in this case, the court was especially mindful of the guiding principle expressed by the Court of Customs and Patent Appeals in its opinion as follows:

> We note from the record an agreement that this is to be considered a test case upon which a substantial number of controversies of a similar nature between importers and the Government will likely be resolved. This is an additional reason we feel all competent testimony bearing upon the questions in issue should be received.
>
> We have examined the entire record with great care and are firmly of the opinion that the testimony sought to be presented by the Government was relevant and material to a clear understanding and proper disposition of the issues involved and should have been admitted.

The court, therefore, permitted the receipt of much evidence which would otherwise have been excluded on grounds of immateriality and irrelevancy.

The questions in issue have been narrowed by the parties. Both parties rely upon the appraisements made by the appraiser. The defendant relies upon the appraisements *in toto*. The plaintiff relies upon the appraisements with the exception only of the percentage advances made by the appraiser by reason of shrinkage. Thus, the only item of the appraised values challenged is the correctness of the addition by the appraiser of the percentage advances to the entered values. *United States* v. *Fritzsche Bros., Inc.*, 35 C. C. P. A. (Customs) 60, C. A. D. 371, citing *United States* v. *Freedman & Slater, Inc.*, 25 C. C. P. A. (Customs) 112, T. D. 49241, is authority holding that in such situation the remaining items or elements of the appraisements stand as presumptively correct.

Moreover, both parties have agreed that the appraised values, except as challenged, represent both the foreign and export values of the merchandise in its condition as imported, and that both foreign and export value in each case were the same.

Thus, the proper basis for the determination of the value of the hides in question is not in issue, nor is there any question as to any of the elements of such value basis, or of the value itself, except as to the application to the value of the percentage additions made by the appraiser.

The net effect of the agreements and reliance of the parties upon the appraisements as above stated is (1) to limit the issues, and (2) to establish certain facts and make unnecessary the introduction of evidence with respect to those facts.

Hence, the issues are limited to the question of whether the foreign and export values, as defined in the tariff act, as amended, of merchandise such as or similar to that in issue (i. e., wet salted frigorifico sound bull hides *which had shrunk to the extent of the percentages returned by the appraiser*) included the amounts in Argentine currency represented by the percentage advances made by the appraiser, or whether the foreign and export values of such or similar merchandise did *not* include the said amounts represented by the percentage advances made by the appraiser.

The agreements and reliance of the parties upon the appraisements also establish that at the time of exportation of the merchandise here in issue, merchandise such as or similar thereto (i. e., wet salted frigorifico sound bull hides *which had shrunk to the extent of the percentages returned by the appraiser*) was freely offered for sale for home consumption and for exportation to the United States to all purchasers *in the principal markets of Argentina,* in the usual wholesale quantities and in the ordinary course of trade.

The court is limited to the facts as developed. If it were a fact that wet salted frigorifico sound bull hides *which had shrunk to the extent of the percentages returned by the appraiser,* or hides similar thereto were not, at the times of exportation of the merchandise herein, offered for sale in the foreign market, it would follow that there could be neither a foreign nor an export value therefor. But the parties have, by their reliance upon and adherence to the bases of value returned by the appraiser, in legal effect agreed that a foreign and export value *did* exist for merchandise of that description and in that condition, from which it follows that hides of that description and in that condition, or hides similar thereto, were freely offered for sale in accordance with the elements set forth in the valuation statute.

Furthermore, the evidence offered affirmatively supports the existence of foreign and export value. It was established that *in the foreign market* there was no standard of moisture content for wet salted frigorifico sound bull hides, and that no allowance was ever made in the price by reason of excess moisture content nor did the price increase by reason of loss of weight due to evaporation of moisture. Moisture or water content, so far as the record shows, was not an element, either express or implied, in the purchase and sale of hides *in the foreign market.* The facts show simply that *whatever the moisture content was at the time of shipping from the frigorifico* the price of hides was 78 Argentine pesos per 100 kilos. That situation, so far as the record shows, covered hides containing moisture to the saturation point and also hides which had lost moisture to the extent of the percentages returned by the appraiser.

The only competent, material, and relevant evidence in the case as to the *price* in the foreign market at which wet salted frigorifico

sound bull hides were freely offered for sale or sold at the times of exportation of the instant merchandise establishes that the said price was 78 Argentine pesos per 100 kilos of weight at the frigorifico. We determine the value of the hides under appraisement by the value in the foreign market of such or similar hides, i. e., hides which had shrunk to the extent of the percentages returned by the appraiser. The evidence is conclusive that the *only* price at which hides such as or similar to those in issue were freely offered for sale in the foreign market was 78 Argentine pesos per 100 kilos *based upon their weight at the time of shipment, whatever that might be.* That is the only price and basis at which they were *actually* offered.

Evidence as to what wet salted frigorifico sound bull hides *would* have cost *if* sold in the foreign market on a landed weight basis is, therefore, wholly immaterial. It is not probative of any fact with respect to the price at which wet salted frigorifico sound bull hides *were actually* offered. The foreign and export value sections of the statute are not concerned with what merchandise such as or similar to that under appraisement *would* cost *if* offered on a basis other than the basis on which it was actually offered.

Similarly, evidence that "the per pound price of such hides is mathematically higher when the hides are delivered in the United States" is of no materiality. First, we are not here concerned with the price "when the hides are delivered in the United States." We are concerned with the price *in the foreign market*. The statute seeks to determine the price of such or similar merchandise at a time when it is "packed ready for shipment" in the foreign market—not when it is delivered in the United States. Secondly, the statute calls for *actual* offers or sales of such or similar merchandise as the basis upon which the value shall be found. Use of mathematical computation in the manner suggested by the foregoing evidence would result merely in an estimation of value by a process of computation but would not be based upon actual fact. It is not the method provided by the statute by which foreign or export value shall be determined.

In an analogous situation in *United States* v. *Alatary Mica Co.*, 19 C. C. P. A. (Customs) 30, 34, T. D. 44871, our appellate court said:

* * * But * * * it is no proof of the export or foreign values to take a certain grade of mica and estimate the amount of inferior mica contained therein and then arrive at the value of the same by deducting a certain percentage from the value of first-grade mica. This is not evidence of sales or offers of sales in the country of export. Foreign or export value may not be ascertained in this manner. *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714. * * *

Similarly, the statute is concerned with *market* value, which is not necessarily the same as *intrinsic* value. Therefore, evidence as to what the purchaser actually sought or anticipated when he bought hides is not relevant to the issue here. The fact that the desired

element on the part of the purchaser of hides is hide fiber or material in the hide which could be tanned into leather has no probative value as tending to establish the price at which *hides* are freely offered for sale in the market when hides are sold by *weight*, not by hide fiber content, superficial area, potential leather content, or any other basis, but *weight of the hides themselves.*

Therefore, even though the hides in question, *considered as a lot or a shipment*, did not lose *intrinsic* value by reason of the loss of weight due to shrinkage or evaporation of water or moisture content, they did, as a lot or a shipment, lose weight. There is no competent, material, or relevant evidence in the case which establishes that hides in the condition of those imported were freely offered for sale in the foreign market at any price other than 78 Argentine pesos per 100 kilos.

Upon all of the competent, material, and relevant evidence before me I find as facts:

(1)   That the merchandise involved in these appeals for reappraisement is wet salted frigorifico sound bull hides exported as two shipments from Buenos Aires, Argentina, on July 7, 1944, and entered in the United States on August 19, 1944.

(2)   That between the date of exportation from Argentina and the date of weighing in the United States the hides in these shipments lost weight, due to the evaporation of water or moisture content or shrinkage, to the extent of the percentages of landed weight indicated by the appraiser in his appraisements herein.

(3)   That at the time of exportation of the hides in question Buenos Aires was the principal market in Argentina for the sale of wet salted frigorifico sound bull hides such as or similar to those here in question both for home consumption in Argentina and for exportation to the United States.

(4)   That at the said time of exportation hides such as or similar to those here in issue, i. e., wet salted frigorifico sound bull hides which had shrunk to the extent of the percentages returned by the appraiser, were freely offered for sale for home consumption and for exportation to the United States to all purchasers in Buenos Aires, in the usual wholesale quantities and in the ordinary course of trade.

(5)   That in the offer for sale as above stated of such or similar hides moisture or water content was not an element, either express or implied, affecting the offered price thereof.

(6)   That the price, at the said time of exportation, at which hides such as or similar to those here involved were freely offered for sale under the conditions expressed in findings (4) and (5), including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, was 78

Argentine pesos per 100 kilograms, plus dutiable charges as invoiced in the shipments here involved.

I conclude as matters of law:

I. That the foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as amended, and the export value, as defined in section 402 (d) of the same act, of the hides at bar are the same.

II. That the proper basis for determining the value of this merchandise is such foreign and export value.

III. That such foreign and export value in each instance is the entered value.

Judgment will issue accordingly.