[Civ. No. 31801. First Dist., Div. One. Feb. 26, 1973.]

JOSEPH LYNN WEBER et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

---

## COUNSEL

Morgan, Beauzay & Hammer and Paul B. Kemp for Petitioners.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Robert R. Granucci and Ronald E. Niver, Deputy Attorneys General, for Respondent and for Real Party in Interest.

---

## OPINION

**MOLINARI, P. J.**—An alternative writ of prohibition was granted by this court upon petitions for writ of prohibition and mandamus following the denial of motions made pursuant to Penal Code sections 995 and 1538.5.

Pursuant to a search warrant issued by the United States District Court, law enforcement officers entered the premises at 320 University Avenue, San Jose. The warrant described the premises to be searched and the property to be searched for at the residence as "1) one mail parcel containing hashish addressed to Nancy King c/o Joe Weber, 320 University, San Jose,

Calif. from James Hall, Divine Life Mission, Hardwar U.P., India. 2) Other narcotics, hashish, marijuana or narcotic paraphernalia. 3) Correspondence relating to smuggling of hashish, marijuana or narcotics. 4) Or, the means and instruments used in violation of 21 USC 952, which are the fruits and instrumentalities of a violation of 21 USC 952."

Upon a search of the entire premises the officers found certain contraband including two packages containing hashish. One of these packages was addressed to "Nancy King, c/o Joe Weber, 320 University, San Jose, Calif." and the other was addressed to "Sherry King, c/o Joe Weber, 320 University, San Jose, California." Prior to delivery, these two packages had been found to contain hashish by the United States Customs Department. They were delivered under controlled conditions and the subject warrant was executed 36 minutes after delivery. In the affidavit for the issuance of the search warrant setting forth the discovery of the hashish by customs officers, Charles Young, a customs officer, stated that it was his experience that in cases where smuggled goods were delivered other contraband was often found on the premises.

The only attempt made by the officers to ascertain whether the persons to whom the packages were addressed actually existed or, if they did exist, were persons in control of any part of the subject premises, consisted of checking the telephone directory and the registration of vehicles parked in front of said premises. The telephone directory disclosed that a telephone was listed for said premises in the name of Marie Lopez. The record is silent as to what, if anything, was disclosed by the automobile registrations. There was no surveillance on the house to ascertain whether "Nancy King" or "Sherry King" resided on the premises.

At the time of the search, the subject premises were occupied by petitioners Joseph Lynn Weber and Marie Dalia Lopez. When the officers first encountered Weber and told him they were serving a search warrant, Weber stated "Is it because of the packages?"

One of the officers who had observed the two packages previous to the controlled delivery testified that when the officers found the two packages in the residence one of them had been opened and bore indications that it had been retied.

Petitioners were charged with violating Health and Safety Code sections 11910 (possession of an amphetamine), 11530 (possession of marijuana), 11530.5 (possession for sale of marijuana) and 11555 (possession of narcotics paraphernalia). They were also charged with violating Penal Code section 12020 (possession of a sawed-off shotgun).

This case is similar in every respect to *People v. Superior Court (Marcil)* 27 Cal.App.3d 404 [103 Cal.Rptr. 874],[1] recently decided by this court, with the one exception that in the case now before us the persons named as consignees were not on the premises when the search was made. The packages were consigned respectively to "Nancy King" and "Sherry King" in care of petitioner Weber. This factual distinction does not require a result different from that reached by us in *Marcil*. As in *Marcil*, the affidavit for the search warrant set forth reasonable cause to believe that the mail parcel addressed to "Nancy King" in care of Joe Weber would be located at the premises designated in the warrant. This circumstance justified the issuance of the search warrant for the seizure of the contraband contained in the package whether or not "Nancy King" was present on the premises.

In *Marcil* it was held that a warrant, issued pursuant to an affidavit such as that in the present case, authorized the search for other narcotics and narcotic paraphernalia on the premises to which the warrant is directed upon statements in the affidavit that additional narcotics and narcotic paraphernalia are often found in or on premises where controlled deliveries of smuggled marijuana or narcotics have been made. (27 Cal.App.3d at pp. 411-414.) This conclusion finds its rationale in the fact, established by other allegations, that the consignee is to receive contraband at the address to which it is consigned. This fact, in turn, furnishes probable cause to believe that other contraband is present. (27 Cal.App.3d at p. 411.)

As observed in *Marcil*, "A reasonable and prudent magistrate could infer that the consignee of contraband mailed from outside the United States would know that he was party to an illegal transaction and that, branded with such knowledge, it is reasonable to infer that the consignee possesses other contraband of foreign or domestic origin." (27 Cal.App.3d at p. 411.)

The circumstance that Weber was not the consignee but a person who received the package as an agent for the consignee does not militate against the right to seize the contraband pursuant to the warrant. Having permitted the consignee to use his premises as the place for the receipt of the contraband, the recipient cannot frustrate the seizure of the contraband by claiming that he is not a knowledgeable party to the shipment. Moreover, such permission cannot frustrate the search for additional contraband if the consignee using the recipient's premises as a place of delivery is the type of consignee whose actions furnish the inference that there is probable cause to believe other contraband under the control of the consignee will be present on the premises.

---

[1] A hearing was denied by the Supreme Court.

The possibility that the recipient is an innocent party has no relevancy to the seizure of the contraband but has relevancy only to the issue of the sufficiency of the evidence to hold the recipient to answer upon the charge of knowingly possessing the contraband, if he is so charged. We point out here that there is a strong suspicion that Weber was a knowledgeable party to the shipment in view of his spontaneous statement, "Is it because of the packages?" made to the officers executing the warrant.

Accordingly, since the officers were justified in searching for the contraband in the controlled package and for any additional contraband described in the warrant, any other contraband found in the course of such search will not be suppressed and will suffice as a basis for appropriate charges against parties, other than the consignee of the controlled package, who have possession or control of the contraband discovered in the course of the search. (*Skelton* v. *Superior Court,* 1 Cal.3d 144, 157 [81 Cal.Rptr. 613, 460 P.2d 485].)

■ Petitioners also claim that there was not sufficient evidence presented to show probable cause to believe that they violated Health and Safety Code section 11530.5 (possession for sale of marijuana). They assert that since the sole basis for the possession for sale of marijuana stems from the hashish found in the two packages, there is no probable cause to believe that they had possession, control or knowledge of the narcotic character of the contents in view of the fact that they were not the addressees and there was no evidence that they had opened the packages.

■ "The elements of possession of narcotics are physical or constructive possession thereof coupled with knowledge of the presence and narcotic character of the drug. [Citations.] Constructive possession occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another. [Citation.] The elements of unlawful possession may be established by circumstantial evidence and any reasonable inferences drawn from such evidence. [Citations.]" (*People* v. *Newman,* 5 Cal.3d 48, 52 [95 Cal.Rptr. 12, 484 P.2d 1356].) ■ Where the charge is "possession for sale of marijuana" an additional element must be established, i.e., that the possession by the accused was for the purpose or intent of selling the marijuana. (See *People* v. *Newman, supra,* at p. 53.) This element may likewise be established by circumstantial evidence and any reasonable inferences drawn from such evidence. (*People* v. *Newman, supra,* at p. 53.)

In the instant case sufficient circumstantial evidence existed from which the magistrate at the preliminary hearing could infer, for purposes of probable cause, that petitioners possessed the hashish and had knowledge of its presence. The hashish was found in the family room of the residence in which petitioners were the only persons present when the packages were delivered and when they were seized. One of the packages had been opened, and while there was no direct evidence that either of petitioners had opened it, it may be inferred that it was opened by one of them or both since they were the only occupants of the premises at the time of delivery and prior to the search. Both petitioners had immediate access to the packages which were subject to their joint dominion and control. At the time the officers sought entry into the residence they first spoke to petitioner Lopez at the entrance door. She told them, "Just a minute, I'll get my husband" and she turned and started to walk away. She also stated that her "husband" was in the shower. The officers followed her into the bathroom and when they entered petitioner Lopez was sitting next to petitioner Weber. Under these circumstances it is inferable that petitioners as the sole occupants of the residence, living as man and wife, jointly possessed the substance in the packages and that they were aware of the presence of the substance. (See *People* v. *Harrington,* 2 Cal.3d 991, 998-999 [88 Cal.Rptr. 161, 471 P.2d 961]; *People* v. *Haynes,* 253 Cal.App.2d 1060, 1064-1065 [61 Cal.Rptr. 859] [cert. den. 392 U.S. 914 (20 L.Ed.2d 1373, 88 S.Ct. 2075)].) Moreover, as to Weber, his statement "Is it because of the packages?" when he was served with the search warrant, warrants an inference that he was aware of the contents of the packages. It should also be observed that this statement was made in the presence of petitioner Lopez who made no comment negating knowledge of the packages.

Petitioners' knowledge of the character of the contents of the packages was sufficiently established by the fact that other marijuana and restricted drugs were found in the residence. Moreover, the mere possession of a narcotic by one aware of the presence of the substance constitutes substantial evidence that the possessor knew of its nature. (*People* v. *White,* 71 Cal. 2d 80, 83 [75 Cal.Rptr. 208, 450 P.2d 600]; *People* v. *Gordon,* 10 Cal. App.3d 454, 460 [89 Cal.Rptr. 214].) Additionally, with respect to petitioner Weber, his statement to the officers above alluded to warrants an inference of a guilty knowledge that the parcels contained contraband.

The sale purpose of the possession was established by evidence that each of the packages contained two bricks of hashish material, each of the bricks being approximately 6 to 8 inches long and 4 to 5 inches wide; and the testimony of a police officer, testifying as an expert, that the subject hashish had a "street value" of $4,620. Such a large quantity and its large monetary

value is evidence from which it could be inferred that it was possessed for sale, particularly when considered in conjunction with the other marijuana and dangerous drugs found on the premises. (See *People* v. *Newman, supra,* 5 Cal.3d 48, 53; *People* v. *Gordon, supra,* 10 Cal.App.3d 454, 460; *People* v. *Solo,* 8 Cal.App.3d 201, 208 [86 Cal.Rptr. 829]; *People* v. *De La Torre,* 268 Cal.App.2d 122, 126 [73 Cal.Rptr. 704].)

The alternative writ of prohibition is discharged and the petitions for writ of prohibition and writ of mandamus are denied.

Elkington, J., and Weinberger, J.,* concurred.

A petition for a rehearing was denied March 26, 1973, and petitioners' application for a hearing by the Supreme Court was denied April 25, 1973.

---

*Assigned by the Chairman of the Judicial Council.