[Crim. No. 11224. First Dist., Div. One. July 26, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT ANTHONY DUNCAN, Defendant and Appellant.

## COUNSEL

Romines, Wolpman, Tooby, Eichner, Sorensen & Constantinides, Charles Constantinides and Robert Charrow for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, W. Eric Collins and Eugene Kaster, Deputy Attorneys General, for Respondent.

## OPINION

**SIMS, J.**—Defendant who was admitted to probation for a period of three years following his conviction by plea of guilty of possession of cocaine in violation of section 11500 (now § 11350) of the Health and Safety Code, has appealed from that order.[1] He seeks review of an order of the trial court which denied his motion to suppress evidence (Pen. Code, § 1538.5, subd. (m)), and also, having secured a certificate of probable cause (§ 1237.5), he seeks review of an order denying his motion to dismiss (§ 995) a count of the information charging him with importation of hashish into this state in violation of section 11531 (now § 11360) of the Health and Safety Code, which charge, together with a charge of possession of marijuana in violation of section 11530 (now § 11357) of that code were dismissed as a result of the plea bargain which resulted in defendant's conviction.

The search and seizure of which defendant complains was made under a federal warrant issued to, and on the affidavit of, a special agent of the Bureau of Customs, Department of the Treasury, and involved the delivery to and receipt by the defendant of a package of hashish mailed from abroad which was the subject of one dismissed count of the information.[2] Defendant contends that the affidavit on which the warrant was

---

[1]Included in the terms of his probation were the defendant's agreement to submit to chemical testing for detection of the use of narcotics and/or dangerous drugs, and consent to search of and seizure from his person, vehicle and residence. He was ordered to pay a fine of $700, plus a $175 penalty assessment, and received a suspended six months' jail sentence.

[2]The affidavit states in material part, "On August 30, 1971, Special Agent John R. Donovan, Los Angeles, California advised Special Agent James Cameron via telephone that a Customs employee at the Los Angeles Air Mail Facility had discovered a mail parcel arriving from outside the continental United States containing approximately four ounces of a substance resembling hashish. [¶] This mail parcel was addressed to Don Totten C/O R.A. Duncan, 1044 Los Trancos Woods Road, Portola Valley, California and bore a return address of Jack Wolfmann, 176 Zeeburgerduko, Amsterdam, Holland. [¶] This parcel was retained in the security area at the Mail Facility until it was forwarded to Postal Inspector Ivie, P.O. Box 15328, Sacramento, California in a mail pouch using rotary lock number R67554 with a window reading of 105. Postal Inspector Ivie forwarded the mail parcel to Postal Inspector D. C. Alex at San Francisco, California. Postal Inspector D. C. Alex will forward the mail parcel to the proper United States Post Office having delivery control over 1044 Los Trancos Woods Road, Portola Valley, California. That United States Post Office will retain the mail parcel until this parcel is delivered at the address of 1044 Los Trancos Woods Road, Portola Valley, California by a designated postal carrier. [¶] On September 23, 1971, Special Agent Douglas N. Keener removed a sample of the questioned substance from this mail parcel and submitted the sample to the Customs Custodian of Seizures, San Francisco. On September 28, 1971 S/A Keener received information from the Customs Chemist that the sample was hashish. [¶] Execution of

issued was insufficient to justify issuance of a warrant for a search for the package in question, and, more specifically, insufficient to justify authorization of a general search of the premises for other contraband, which in fact turned up the cocaine, the subject of the charge of which he was convicted, and the marijuana, which was the subject of the other dismissed count of the information. More particularly he claims that the affidavit contains insufficient facts from which the magistrate could have determined the reliability of the information before him, and that the original search of the parcel, transmitted as first class mail, was illegal because there was nothing to show that the opening agent had a real suspicion that the parcel contained contraband, or that it was opened by an agent authorized to do so. He recognizes that regulations promulgated and effective at or about the time the defendant sent for the hashish have a less stringent standard, but contends those regulations are invalid because in conflict with the governing statute. These contentions are examined and found wanting.

He also seeks to attack his conviction, because it was in part adduced by the fact that he was charged with importation of hashish, by showing that such charge was invalid under the commerce clause and the supremacy clause of the United States Constitution (art. I, § 8; and art. VI), since federal law has preempted the field. Because that charge was dismissed this case is not the vehicle to determine that point, but in any event it does not appear meritorious. The order admitting the defendant to probation must be affirmed.

I

The record shows that the parcel entered the United States through the mail. It was stipulated at the hearing on defendant's motions to suppress and to dismiss that the parcel was transmitted as first class mail. If there was no authority to open the parcel, the affidavit was ineffective to give rise to the issuance of a search warrant irrespective of any other technical inadequacies.

---

the Search Warrant will not be made until after confirmation has been received from the postal employee making the delivery of the parcel that the parcel was delivered at the address 1044 Los Trancos Woods Road, Portola Valley, California. [¶] It has been Customs experience and my personal experience in a number of similar investigations in which I have participated that additional types and quantities of narcotics, narcotics pharaphenalia [sic] and correspondence are often found in or on the premises where controlled deliveries of smuggled marijuana or narcotics have been found.

"Douglas N. Keener [Signature]
Douglas N. Keener
Special Agent, United States Customs"

The authority for customs seizures is found in section 482 of title 19 of the United States Code.[3] It is generally recognized that under this section ". . . a customs officer may search an individual's baggage and outer clothing, in a reasonable manner, based on subjective suspicion alone, or even on a random basis. . . . The arriving international traveler is on notice that such a search may be undertaken, and the search itself involves only the most minor affront to the individual's dignity." (*United States* v. *Stornini* (1st Cir. 1971) 443 F.2d 833, 835 [cert. den. (1971) 404 U.S. 861 (30 L.Ed.2d 104, 92 S.Ct. 162)].) In *United States* v. *McDaniel* (5th Cir. 1972) 463 F.2d 129 [cert. den. (1973) 413 U.S. 919 (37 L.Ed. 2d 1041, 93 S.Ct. 3046)], the court observed: ". . . The fact that one is in the process of crossing an international boundary provides sufficient reason in itself to permit a search for aliens or contraband, without the presence of any other circumstance that would normally have to attend the requirements of the Fourth Amendment." (463 F.2d at p. 132. See also *Carroll* v. *United States* (1925) 267 U.S. 132, 154 [69 L.Ed. 543, 551-552, 45 S.Ct. 280, 39 A.L.R. 790]; *Murgia* v. *United States* (9th Cir. 1960) 285 F.2d 14, 17 [cert. den. (1961) 366 U.S. 977 (6 L.Ed.2d 1265, 81 S.Ct. 1946)]; *King* v. *United States* (5th Cir. 1958) 258 F.2d 754, 756 [cert. den. (1959) 359 U.S. 939 (3 L.Ed.2d 639, 79 S.Ct. 652)]; and *Landau* v. *United States Attorney* (2d Cir. 1936) 82 F.2d 285, 286.) The general rule of inspection of persons is qualified by recognition that "nothing leads a person to anticipate that, on reaching our border, he will be . . . subjected to a skin search." (*United States* v. *Guadalupe-Garza* (9th Cir. 1970) 421 F.2d 876, 878.) "The customs official must have 'at least a real suspicion, directed specifically to that person' to sustain such a search." (*Id.*, at p. 879. See also *United States* v. *Johnson* (9th Cir. 1970) 425 F.2d 630, 632 [cert. granted (1971) 400 U.S. 990 (27 L.Ed.2d 437, 91 S.Ct. 451)]; and *Henderson* v. *United States* (9th Cir. 1967) 390 F.2d 805, 808.) Border searches must be reasonable even though they may be

---

[3]This section provides: "Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law; and if any such officer or other person so authorized shall find any merchandise on or about any such vehicle, beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in, or upon such vehicle, beast, or otherwise, he shall seize and secure the same for trial." (See also 19 U.S.C.A. §§ 1461 and 1499; and cf. 39 U.S.C.A. § 4057.)

made without a warrant or the probable cause necessary for an arrest. (See *Boyd* v. *United States* (1886) 116 U.S. 616, 623-624 [29 L.Ed. 746, 748-749, 6 S.Ct. 524]; and *United States* v. *Glaziou* (2d Cir. 1968) 402 F.2d 8, 12 [cert. den. (1969) 393 U.S. 1121 (22 L.Ed.2d 126, 89 S.Ct. 999)].)

Numerous cases have determined that imports by mail may be inspected without the probable cause required for a search of domestic mail. (See *People* v. *Sloss* (1973) 34 Cal.App.3d 74, 81 [109 Cal.Rptr. 583]; *United States* v. *Doe* (2d Cir. 1973) 472 F.2d 982, 984-985 [cert. den. (1973) 411 U.S. 969 (36 L.Ed.2d 691, 93 S.Ct. 2160)]; *United States* v. *Galvez* (10th Cir. 1972) 465 F.2d 681, 687; *Chapman* v. *United States* (10th Cir. 1971) 443 F.2d 917, 920; *United States* v. *Beckley* (6th Cir. 1964) 335 F.2d 86, 88-89 [cert. den. (1965) 380 U.S. 922 (13 L.Ed.2d 807, 85 S.Ct. 921)]; *United States* v. *Swede* (S.D.N.Y. 1971) 326 F.Supp. 533, 535-536; and *United States* v. *Sohnen* (E.D.N.Y. 1969) 298 F.Supp. 51, 54-55.)[4]

■ Defendant contends that because of the express words of the statute, and the regulations promulgated for the guidance of customs and postal officers and employees, he, and presumably the sender, had a reasonable expectation of privacy which rendered the opening of the package an unlawful search. (See *Katz* v. *United States* (1967) 389 U.S. 347, 361 [19 L.Ed.2d 576, 587-588, 88 S.Ct. 507]; *People* v. *Krivda* (1971) 5 Cal.3d 357, 364 [96 Cal.Rptr. 62, 486 P.2d 1262] [cert. den. (1973) 412 U.S. 919 (37 L.Ed.2d 145, 93 S.Ct. 2734)]; and *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1102-1105 [80 Cal.Rptr. 633, 458 P.2d 713].)[5] He distinguishes the cases upholding postal searches decided after *Katz* because they do not discuss the right to a reasonable expectation of privacy. (See, however, *People* v. *Kosoff* (1973) 34 Cal.App.3d 920, 930-

---

[4]It should be noted that the federal magistrate (commissioner) who issued the search warrant in this case in effect interpreted federal law as countenancing the search of the parcel as allegedly made in Los Angeles and as again made in San Francisco by the officer who made the affidavit. Comity might dictate that where both a federal warrant and a federal law are involved the aggrieved defendant should first move to quash in the federal court which issued the warrant. (Cf. *People* v. *Kosoff* (1973) 34 Cal.App.3d 920, 929-930 [110 Cal.Rptr. 391].)

[5]This assertion was not original with defendant. It apparently was spawned by an unreported decision (*People* v. *Greenberg* (1971) 2 Crim. No. 19086, Div. 5) in which the court not only construed earlier federal regulations as creating the expectation of privacy, but also suggested that the forwarding of the parcel was a species of entrapment. (Cf. *People* v. *Kosoff, supra,* 34 Cal.App.3d 920, 932-933; and *Chapman* v. *United States* (10th Cir. 1971) 443 F.2d 917, 920.) The trial court properly disregarded that decision as a precedent. (*People* v. *Cobb* (1971) 15 Cal.App.3d 1, 3 [93 Cal.Rptr. 152]; and see Cal. Rules of Court, rule 977, effective Jan. 1, 1974.)

932 [110 Cal.Rptr. 391]; and *United States* v. *Doe, supra*, 472 F.2d 982, 985.)

The regulations relied upon by defendant provided that any sealed first class parcel from abroad which does not bear a label permitting customs officers to open it for inspection may not be opened unless the addressee furnishes written authority therefor. If no such authority is furnished the parcel is to be returned to its origin. (See former 19 C.F.R. § 9.5, subd. (b); and former 39 C.F.R. § 261.3, subd. (a), prior to amendment June 22, 1971.[6])

The parcel in this case first appears of record on August 30, 1971, when one customs special agent advised another of the discovery of the package. One special agent testified at the preliminary examination that the defendant stated he sent $150 to Holland for the hashish approximately the first or second week in August.[7] Therefore, amendments to the postal and customs regulations published June 22, 1971, and effective July 22, 1971, govern this case. (See *People* v. *Sloss, supra*, 34 Cal.App. 3d 74, 81.) The earlier regulations provided, "All mail believed to contain merchandise . . . [is] subject to customs examination . . . [with noted exceptions]." (39 C.F.R. § 261.1, and see language in 19 C.F.R. § 9.5, subd. (b), fn. 6 above.) The new regulations provide, "All mail originating outside the customs territory of the United States is subject to customs examination . . . [with noted exceptions] . . . ." (39 C.F.R. § 61.1.) The references to labeling and notice to the addressee have been deleted from

---

[6]19 C.F.R. section 9.5 read in relevant part as follows: "(b) When a sealed envelope or other parcel (other than parcel post) believed to contain merchandise is not endorsed or labeled as required, the postmaster will detain it in his custody and request the addressee to furnish written authority for a customs officer to open the parcel in the presence of a representative of the postmaster. If the addressee does not furnish such written authority within 30 days after the date of notice by the postmaster or within such further time as may be allowed, the parcel will be treated as undeliverable mail matter. . . ."

39 C.F.R. section 261.3 read in relevant part as follows: "(a) *Authority to open sealed articles*. Sealed letters and letter packages containing merchandise should bear a green label (Form C 1) or an endorsement permitting the customs officer to open the article for examination. In the absence of a label or endorsement, the post office will obtain the addressee's signed authority for opening on Form 2921, 'Held Notice —International Mail.' If such authority is not granted within 15 days after the first notice, send a second notice. If no response is received from the second notice after an additional 15-day period, endorse the article 'Unclaimed' and return it to origin. Sealed parcel post is opened without any formality." (See *People* v. *Kosoff, supra*, 34 Cal.App.3d 920, 926-927.)

[7]Since the search was legal it is unnecessary to answer defendant's contention that his admissions should be excluded as the product of an illegal search. (Cf. *People* v. *Faris* (1965) 63 Cal.2d 541, 546 [47 Cal.Rptr. 370, 407 P.2d 282].)

the customs regulations. (Cf. 39 C.F.R. § 61.3; see 36 F.Reg. No. 120P-11851, June 22, 1971.) At the same time the customs regulations were revised to provide, "When, upon customs examination, a parcel or envelope from abroad . . . is found to contain material prohibited importation or imported contrary to law, the merchandise is subject to seizure and forfeiture . . . ." (19 C.F.R. § 9.5.) The provision for notice to the addressee or the sender in connection with such goods was deleted. Further amendments provided, "Except for lottery matter, all mail shipments containing articles which are prohibited importation, and all mail shipments containing articles subject to seizure as being imported contrary to law, shall be immediately taken and held by customs officers for appropriate treatment under the customs law." (19 C.F.R. § 9.12.)[8]

Defendant erroneously refers to the standard "mail believed to contain merchandise" as though it were part of the amended regulations, and contends that such standard is invalid because it is inconsistent with the statutory authorization which requires an official of the class designated therein to "have a reasonable cause to suspect there is merchandise which was imported contrary to law" before he may search "any trunk or envelope." (19 U.S.C. § 482, fn. 3 above.) His argument nevertheless applies to the new regulations which are intended to require the postal authorities to submit to customs authorities for examination "all articles of mail originating outside the customs territory of the United States which are believed to contain prohibited or dutiable matter." (See fn. 8 above.)

If the regulations are inconsistent with the statute and impose restrictions not authorized by law they should be held invalid. (See *Campbell* v. *United States* (1883) 107 U.S. 407, 410 [27 L.Ed. 592, 594, 2 S.Ct. 759];

---

[8]The purpose of the amendments to the regulations was expressed as follows: "Existing regulations provide that, before sealed articles of foreign origin which are believed to contain prohibited or dutiable matter may be opened, the consent of the addressee must be obtained, unless the article is endorsed by the sender to permit opening. If the consent is not given, the article is returned to its sender if known. The administration of these regulations with respect to articles believed to contain matter prohibited because obscene, has been suspended since January 21, 1971, because of doubts as to validity of their enforcement in the light of the decision of the Supreme Court in *Blount* v. *Rizzi,* 400 U.S. 410 (1971). The Commissioner of Customs, moreover, has stated that the long recognized authority of the Bureau of Customs to open sealed letters arriving in the international mail has been inhibited by the presence of these regulations.

"In lieu of the current procedures, the proposed amendments provide for the submission directly to customs officials for customs treatment, including examination, of all articles of mail originating outside the customs territory of the United States which are believed to contain prohibited or dutiable matter. The proposed amendments do not authorize the opening of any sealed article by a postal officer or employee." (See *People* v. *Kosoff, supra,* 34 Cal.App.3d 920, 928-929.)

and *Balfour* v. *Sullivan* (D.Cal. 1883) 17 F. 231, 233.) Defendant assumes that "imported contrary to law" only refers to contraband. Examination of the section (see fn. 3 above) indicates that the authority to search is intended to reveal not only merchandise "unlawfully introduced into the United States," but also merchandise "subject to duty." It is obvious that the latter fact cannot be ascertained with respect to parcels otherwise unidentified without an inspection and examination involving a search. The 1971 regulations are consistent with the statute and authorized by the "long recognized authority of the Bureau of Customs to open sealed letters arriving in the international mail" (see fn. 6 above) as manifested by the precedents which have been reviewed above.

The customs officers were authorized by law and regulation to open the package in question and determine its contents. (*People* v. *Sloss, supra,* 34 Cal.App.3d 74, 81.)

## II

Defendant further contends that even if the customs officers may have authority to search incoming first class mail believed to contain merchandise, or prohibited or dutiable matter, the affidavit upon which the search warrant was issued failed to show compliance with the applicable law and regulations. His objections are predicated upon a myopia which concentrates on the first paragraph of the affidavit (see fn. 2 above), and overlooks the fact that the affiant, a special agent, United States Customs, on September 23, 1971, of necessity personally examined the parcel in question, then in the hands of the postal service at San Francisco, when he removed a sample of the questioned substance to submit to the customs chemist. He, therefore, was personally qualified to testify to the designated return address and addressee appearing on the parcel, and as well to the contents he discovered. (See *Jones* v. *United States* (1960) 362 U.S. 257, 269 [4 L.Ed.2d 697, 707, 80 S.Ct. 725, 78 A.L.R.2d 233]; and *People* v. *Bustamante* (1971) 16 Cal.App.3d 213, 217-218 [94 Cal.Rptr. 64].)

Defendant's contention that the affidavit fails to show that the affiant, and as well the other special agents and the employee of the customs service mentioned therein, were "officers or persons authorized to board or search vessels" within the governing statute (see fn. 3 above) is not persuasive. Nor is the further argument that the affidavit must affirmatively show that the opening officer is an experienced and prudent customs official who is legally capable of formulating "reasonable cause to suspect" that the parcel contains contraband. As has been noted above, it is sufficient to justify a search if it appears that the parcel contains either

prohibited or dutiable matter. No expertise is required to determine whether a given piece of mail is a mere letter, or a parcel containing merchandise. The probable cause to conduct a body search (see *United States* v. *Guadelupe-Garza, supra,* 421 F.2d 876, 879, and related cases cited, part I above) is not a requisite of the authority to open international mail containing merchandise. ·

In *People* v. *Superior Court* (*Johnson*) (1972) 6 Cal.3d 704 [100 Cal. Rptr. 319, 493 P.2d 1183], the court collated the following rules: ". . . the superior court is required, even at such a hearing [with respect to the adequacy of a search warrant] to give a commonsense interpretation to the affidavit on which the warrant was based. . . . [¶] Although information provided by even an anonymous informer is relevant on the issue of reasonable cause, evidence must be presented to the court to justify the conclusion that reliance on the information was reasonable. In some instances, the identity of, or past experience with, the informer may provide evidence of the reliability of the information; in others, it may be supplied by similar information from other sources or by the personal observations of the police [citation]. Even though information from an informer is expressed in conclusionary language, and there is no showing why the informer is believed to be reliable on the basis of past experience, a magistrate may properly issue a warrant on the basis of such information if the supporting affidavit also recites facts indicating that reliance on the information is reasonable. [Citations.]" (6 Cal.3d at pp. 711-712. See also *United States* v. *Harris* (1971) 403 U.S. 573, 580 [29 L.Ed.2d 723, 731-732, 91 S.Ct. 2075]; *United States* v. *Ventresca* (1965) 380 U.S. 102, 108-109 [13 L.Ed.2d 684, 688-689, 85 S.Ct. 741]; *People* v. *Sloss supra,* 34 Cal.App.3d 74, 81-82; and *People* v. *Superior Court* (*Marcil*) (1972) 27 Cal.App.3d 404, 409-410 [103 Cal.Rptr. 874].)

In the absence of any evidence to the contrary it may be assumed that the affiant was acting within the scope of his authority. (See *United States* v. *Ventresca, supra,* 380 U.S. 102, 110-111 [13 L.Ed.2d 684, 690-691]; *Chin Kay* v. *United States* (9th Cir. 1962) 311 F.2d 317, 321; *United States* v. *McCormick* (7th Cir. 1962) 309 F.2d 367, 372 [cert. den. (1963) 372 U.S. 911 (9 L.Ed.2d 719, 83 S.Ct. 724)]; *People* v. *Poehner* (1971) 16 Cal.App.3d 481, 488-489 [94 Cal.Rptr. 94]; and *People* v. *Ross* (1968) 265 Cal.App.2d 195, 197-200 [71 Cal.Rptr. 178].)

■ It would appear that the facts within affiant's personal knowledge were sufficient to sustain the issuance of the warrant and the preceding allegations may be deemed to be surplusage. It is arguable, however, that

if those allegations reflected an illegal search of the parcel, and the subsequent search by the affiant was a product of the original search, that the fruits of the later search should be excluded. (See *Wong Sun* v. *United States* (1963) 371 U.S. 471, 484 [9 L.Ed.2d 441, 453, 83 S.Ct. 407].) It is apparently defendant's position that such is the case. He contends that the allegations of the first paragraph fall short of the *Aguilar* two-pronged test, which has been phrased in *People* v. *Superior Court, supra,* 6 Cal.3d 704, as follows: "In order for an affidavit based on an informant's hearsay statement to be legally sufficient to support the issuance of a search warrant, two requirements must be met: (1) The affidavit must allege the informant's statement in language which is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in the statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable. (*Skelton* v. *Superior Court,* 1 Cal.3d 144, 152 . . .; *People* v. *Hamilton,* 71 Cal.2d 176, 179-180 . . . .)" (6 Cal.3d at p. 711. See also *Spinelli* v. *United States* (1969) 393 U.S. 410, 413 [21 L.Ed.2d 637, 641-642, 89 S.Ct. 584]; *Aguilar* v. *Texas* (1964) 378 U.S. 108, 114-115 [12 L.Ed.2d 723, 728-729, 84 S.Ct. 1509]; and *People* v. *Scoma* (1969) 71 Cal.2d 332, 336 [78 Cal. Rptr. 491, 455 P.2d 419].)

Defendant further relies upon the principle expressed in *Remers* v. *Superior Court* (1970) 2 Cal.3d 659 [87 Cal.Rptr. 202, 470 P.2d 11], as follows: "It is well settled that while it may be perfectly reasonable for officers in the field to make arrests on the basis of information furnished to them by other officers, 'when it comes to justifying the total police activity in a court, the People must prove that the source of the information is something other than the imagination of an officer who does not become a witness.' (*People* v. *Adkins,* 273 Cal.App.2d 196, 198 [78 Cal.Rptr. 397] [other citations omitted].) To hold otherwise would permit the manufacture of reasonable grounds for arrest within a police department by one officer transmitting information purportedly known by him to another officer who did not know such information, without establishing under oath how the information had in fact been obtained by the former officer. [Citations.] 'If this were so, every utterance of a police officer would instantly and automatically acquire the dignity of official information; "reasonable cause" or "reasonable grounds," . . . could be conveniently fashioned out of a two-step communication; and all Fourth Amendment safeguards would dissolve as a consequence.' (*People* v. *Pease, supra,* 242 Cal.App.2d 442, 449 [51 Cal.Rptr. 448].)" (2 Cal.3d at pp. 666-667. See

also *People* v. *Madden* (1970) 2 Cal.3d 1017, 1021 [88 Cal.Rptr. 171, 471 P.2d 971].)

Defendant points out that the first paragraph of the affidavit is purely conclusionary. (See *Aguilar* v. *Texas, supra,* 378 U.S. 108, 112 [12 L.Ed. 2d 723, 727]; *Giordenello* v. *United States* (1958) 357 U.S. 480, 486 [2 L.Ed.2d 1503, 1509, 78 S.Ct. 1245]; *Nathanson* v. *United States* (1933) 290 U.S. 41, 47 [78 L.Ed. 159, 161, 54 S.Ct. 11].) It fails to set forth the nature of the office and the authority of the "customs employee" who discovered that the parcel contained a substance resembling hashish; it fails to set forth the manner in which he made the discovery, i.e., by personal observation or from the report of another; it fails to set forth how Special Agent Donovan learned of the discovery by the anonymous employee; it fails to show how the affiant secured the information which had been imparted by Special Agent Donovan to Special Agent Cameron; and it fails to show the source of the affiant's knowledge of the routing of the parcel from Los Angeles to San Francisco.

Whatever shortcomings there might be in the former portions of the affidavit were they being relied upon as the basis for the issuance of a search warrant is immaterial in view of the unquestioned personal observation of the affiant. (See *Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 152-153 [81 Cal.Rptr. 613, 460 P.2d 485].) ■ As noted above, the search warrant will be upheld unless the affidavit is insufficient or shows on its face that the information was illegally acquired. (See *People* v. *Superior Court (Johnson) supra,* 6 Cal.3d 704, 712-714.) The search warrant having been issued on probable cause the burden is on the defendant to show that there were facts or circumstances which rendered the issuance of the warrant improper. (See *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 101 [104 Cal.Rptr. 226, 501 P.2d 234]; *People* v. *Superior Court (Johnson) supra,* 6 Cal.3d 704, 711; and *Williams* v. *Justice Court* (1964) 230 Cal.App.2d 87, 97 [40 Cal.Rptr. 724].) The allegations of which defendant complains fall short of showing that there was any illegality in the original discovery of the contraband.

### III

■ In *People* v. *Superior Court (Marcil) supra,* 27 Cal.App.3d 404, this court upheld the practice of issuing a search warrant to be effective upon the delivery of the contraband through the mails. (27 Cal.App.3d at pp. 410-411.) It was concluded: "A reasonable and prudent magistrate could infer that the consignee of contraband marked from outside the United States would know that he was party to an illegal transaction

. . . ." (*Id.*, at p. 411. See also *People* v. *Kosoff, supra,* 34 Cal.App.3d 920, 932-933; *People* v. *Sloss, supra,* 34 Cal.App.3d 74, 82-83; and *Weber* v. *Superior Court* (1973) 30 Cal.App.3d 810, 814 [106 Cal.Rptr. 593].)

Defendant contends "it is not a crime to be the addressee of contraband." (*United States* v. *Swede, supra,* 326 F.Supp. 533, 537.) It is true that the facts in that case, which involved probable cause to arrest the recipient, showed greater complicity than merely being the addressee of a mailed parcel. It may well be that a misguided acquaintance has unwittingly forwarded the addressee a gift of contraband, or that an enemy may do so to stir up trouble. Nevertheless, in the issuance of a search warrant the court is not concerned with the ultimate question of guilt, but the existence of probable cause to search. (See *People* v. *Kosoff, supra,* 34 Cal.App.3d 920, 933; and *Weber* v. *Superior Court, supra,* 30 Cal.App.3d 810, 815. Note *People* v. *Sloss, supra,* 34 Cal.App.3d 74 where innocent occupant exonerated.) It is not improbable that a parcel of hashish of a retail value of $150 addressed to a name other than that of the known occupant, was sent not as a gift or prank, but at the request of the occupant.

There is no entrapment. "If contraband were simply seized by customs agents and disposed of, then the intended receivers of the illicit goods would go unpunished. The government, in cases such as this, does not initiate the crime. It simply monitors the crime until it can identify the participants. We see no merit in appellants' contention that the commission of the offense would have been impossible without the actions of the agents. The offense would still have been committed. Without the actions of government officials the crime would have gone undetected." (*Chapman* v. *United States, supra,* 443 F.2d 917, 920. See also *People* v. *Kosoff, supra,* 34 Cal.App.3d 920, 922-933.)

Defendant's analogy to the situation where police might plant or throw contraband into an innocent suspect's home in order to show cause for issuance of search warrant is not pertinent to the situation where a third party has directed the contraband to that address, and the remaining question is whether or not it was probably with the connivance of the addressee.

No grounds have been demonstrated to warrant receding from the conclusions expounded in *Marcil.*

## IV

On the basis of the final paragraph of the affidavit (fn. 2 above), the search warrant was not limited to the parcel containing hashish which

was to be delivered by postal authorities. It also included, "2. Other hashish, marijuana, narcotics or narcotics pharaphenalia [sic]. [¶] 3. Correspondence relating of smuggling hashish, marijuana or narcotics. [¶] 4. Or the means and instruments used in violation of 21 USC 952."

Defendant contends that the allegations on the affidavit concerning the presence of other contraband are purely conclusionary, opinionative and based on suspicion. As such, he asserts, they fail to sustain the remaining provisions of the search warrant because no facts are alleged to show probable cause that such was in truth the case. (See *Aguilar* v. *Texas, supra,* 378 U.S. pp. 109, 112 [12 L.Ed.2d pp. 725, 727], and other cases cited in part II above.)

The issue was resolved against the defendant's contention in *People* v. *Superior Court (Marcil) supra,* when this court stated, "A reasonable and prudent magistrate could infer that the consignee of contraband mailed from outside the United States would know that he was party to an illegal transaction and that, branded with such knowledge, it is reasonable to infer that the consignee possesses other contraband of foreign or domestic origin." (27 Cal.App.3d at p. 411. See also *People* v. *Sloss, supra,* 34 Cal. App.3d 74, 82-83; and *Weber* v. *Superior Court, supra,* 30 Cal.App.3d 810, 814.)

Defendant seeks a change of decision because the inference of possession of other contraband is too slight. He points out that it might be improper to issue a general search warrant for the location addressed immediately on discovery of the illicit importation, and that therefore the addition of the "charade" of delivering the parcel can give no greater right to a general search. This argument overlooks the fact that the delivery and receipt of the parcel insures that the premise upon which the right to a general search is predicated has been established. If the postal authorities are advised that the addressee does not live at the location addressed, or that he has moved, or if for some other reason delivery is refused, an attempt to take further action under the conditional search warrant could be ruled improper.

Here again it is probable cause not ultimate guilt which is at issue. No reason has been shown to recede from the conclusions on this point as expressed in *Marcil.*

## V

Defendant was originally charged in a complaint with four counts: I possession of marijuana for sale, II possession of marijuana, III possession

of cocaine for sale and IV possession of cocaine. The magistrate, after hearing the evidence at the preliminary hearing, rejected the prosecutor's suggestion that he could hold the defendant for importation of hashish. He restricted his determination to the charges set forth in the complaint, refused to hold the defendant to answer on the counts I and III, charging possession for sale, and merely held him on the possession counts, counts II and IV

The evidence at the preliminary hearing did show that the defendant was in possession of the illegally imported hashish, as well as marijuana and cocaine found or turned over by the defendant pursuant to the general terms of the search warrant. The prosecutor therefore properly charged the defendant with importation in violation of section 11531 of the Health and Safety Code, as well as the two charges on which he had been held to answer. (See Pen. Code, § 739.)

Following the denial of defendant's motions defendant executed a change of plea form in which he indicated that with understanding of the charges against him, after discussion of the charges and the possible defenses thereto with his attorney, and with full knowledge of his constitutional rights, he was changing his plea to guilty on the count which charged him with possession of cocaine. The form indicates that the plea was induced by the promise to dismiss the remaining two counts, an assurance that he would not be sentenced to confinement to state prison and a representation that the district attorney would stand mute with respect to any jail sentence. At the same time the deputy district attorney signed a declaration prepared by defendant's attorney, which after reciting the terms of the plea bargain, recited: "That the existence of Count III of said Information (Violation of Section 11531 Health and Safety Code, California) placed this office in a better negotiating position, and had the defendant ROBERT ANTHONY DUNCAN not been accused of Count III in said Information, said defendant would have been permitted to enter a guilty plea to an offense of less severity than that to which he ultimately plead guilty to." On the same day the plea was changed, the two remaining counts were dismissed and the matter was continued for further proceedings which resulted in the order from which the defendant has appealed.

■ The defendant having entered into a plea bargain after the rejection of his contention that the offense in one of the counts, subsequently dismissed, was unconstitutional, should not be given the benefit of the bargain, and also the benefit of an appeal from the order rejecting his contention. Having discussed the nature of the charges against him and the possible defenses thereto with his attorney, he must be deemed to have

known that the chances of his conviction on count III depended on the successful assertion on appeal of the matters urged in his motions in the lower court. Having secured a dismissal of that count he should not now, in the absence of any stipulation to the contrary, be heard to attack his conviction on another charge by collaterally attacking the constitutionality of count III. He wants to have his cake and eat it too. The stipulation of the district attorney is merely a frank appraisal of the situation as it existed and as it was accepted by the defendant at the time of the plea bargain. The certificate of probable cause issued by the trial judge[9] cannot confer jurisdiction on this court to hear an appeal from a charge which has been dismissed.

Generally "irregularities not going to the jurisdiction or legality of the proceedings will not be reviewed." (*People* v. *Laudermilk* (1967) 67 Cal.2d 272, 281-282 [61 Cal.Rptr. 644, 431 P.2d 228] [cert. den. (1968) 393 U.S. 861 (21 L.Ed.2d 128, 89 S.Ct. 139)]. See also *People* v. *Stearns* (1973) 35 Cal.App.3d 304, 306 [110 Cal.Rptr. 711]; *People* v. *Serrano* (1973) 33 Cal.App.3d 331, 338 [109 Cal.Rptr. 30]; *People* v. *Archuleta* (1971) 16 Cal.App.3d 295, 299-300 [93 Cal.Rptr. 881]; and *People* v. *Warburton* (1970) 7 Cal.App.3d 815, 821-822 [86 Cal.Rptr. 894] [cert. den. (1971) 400 U.S. 1022 (27 L.Ed.2d 634, 91 S.Ct. 587)].) In the last cited case the court noted that the issue must be one which "goes to the jurisdiction or the legality of the trial court proceedings in any fundamental sense." (7 Cal.App.3d at p. 821.) This is not a case where the state has failed to keep a plea bargain. (Cf. *People* v. *Delles* (1968) 69 Cal.2d 906, 910-911 [73 Cal.Rptr. 389, 447 P.2d 629]; and see *People* v. *West* (1970) 3 Cal.3d 595, 610 [91 Cal.Rptr. 385, 477 P.2d 409].) By the review afforded above, the defendant has secured the full appellate rights conferred by subdivision (m) of section 1538.5 with respect to the evidence which formed the basis of the count on which he was convicted. He is entitled to no more.[10]

---

[9]This certificate, echoing a declaration filed by defendant's attorney, states: "I . . . Judge of the above-entitled Court, do hereby certify that in the above-entitled cause a question of law is involved which ought to be reviewed by the Court of Appeal of the State of California, First District. Said question of law is whether § 11531 of the Health and Safety Code, when applied to the importation of marijuana from a foreign country is repugnant to Articles VI and I § 8 of the United States Constitution."

[10]Cf. *People* v. *Lewis* (1973), hearing in the Supreme Court granted November 7, 1973, in which it was held that the defendant was foreclosed from review of an order denying his motion to suppress by a "plea bargain," as a result of which four additional counts of robbery, each of which contained an allegation that the defendant was armed with a deadly weapon, were dismissed in consideration of a plea of nolo contendere to a fifth count of robbery in the first degree.

The issue of constitutionality of section 11531 was fairly presented and each party entered the plea bargain with full knowledge of the trial court's ruling and the principles of law which could be applied to contest it. There is no reason that this issue should be considered as different from the other "imponderable questions" which face an accused when he determines whether to accept a promise of leniency for a given plea, rather than risking the possibility of a higher penalty following conviction of the same or other charges. (See *Brady* v. *United States* (1970) 397 U.S. 742, 751 and 756-757 [25 L.Ed.2d 747, 758 and 760-761, 90 S.Ct. 1463]; and *McMann* v. *Richardson* (1970) 397 U.S. 759, 769-771 [25 L.Ed.2d 763, 772-774, 90 S.Ct. 1441].) In the cases last cited the court rejected the theory that the subsequent adjudication that the harsher penalty provision of a statute was unconstitutional furnished grounds for setting aside earlier convictions under the statute which had resulted from guilty pleas induced by a fulfilled promise of more lenient punishment. So here a determination that section 11531 was unconstitutional would not of necessity invalidate the defendant's plea which was entered at a time the section's constitutionality had not been established.

The defendant's contention is predicated upon the theory that the federal government has preempted the field of the importation of marijuana from foreign countries,[11] and that the state statute[12] is unconstitutional insofar as it refers to such importation. Article VI of the United States Constitution provides in pertinent part, "This Constitution and the Laws of the United States which shall be made in Pursuance thereof; . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Article I, section 8, states in part: "Congress

---

[11]Legislative history shows that pursuant to Congress' plenary powers under article I, section 8, it enacted legislation in 1956 to prohibit the illegal importation from foreign countries of marijuana. (See 21 U.S.C. § 176(a); 2 U.S. Code Cong. & Admin. News (1956) p. 3274, and pp. 3276-3280; *Daut* v. *United States* (9th Cir. 1968) 405 F.2d 312, 315-316 [cert. den. (1971) 402 U.S. 945 (29 L.Ed.2d 114, 91 S.Ct. 1624)].) This statute was amended and reenacted in 1970 as 21 U.S.C. § 952. (See Pub. L. 91-513, tit. III, § 1002, Oct. 27, 1970, 84 Stat. 1285; 3 U.S. Code Cong. & Admin. News (1970) p. 4566.)

[12]At the time of the filing of the information and the guilty plea, section 11531, which was first adopted in 1959 (Stats. 1959, ch. 1112, § 8, p. 3195), read in relevant part: "Every person who . . . imports into this state . . . or attempts to import into this state . . . any marijuana shall be punished by imprisonment in the state prison for a period of five years to life and shall not be eligible for release upon completion of sentence or on parole or any other basis until he has been imprisoned for a period of not less than three years in the state prison." (Stats. 1970, ch. 1098, § 9, pp. 1950-1951.) Note: this section was repealed and reenacted as § 11360 in Stats. 1972, ch. 1407, § 3, pp. 3605-3606, effective Mar. 7, 1973.)

shall have Power . . . To Regulate Commerce with foreign Nations, and among the several States . . . ."

Defendant relies upon the general principle that when Congress has acted under its granted powers its legislation controls where state action conflicts, or when Congress so ordains. (See *Florida Avocado Growers* v. *Paul* (1963) 373 U.S. 132, 142-143 and 146 [10 L.Ed.2d 248, 256-257 and 259, 83 S.Ct. 1210]; *Colorado Comm'n.* v. *Continental* (1963) 372 U.S. 714, 722 [10 L.Ed.2d 84, 90, 83 S.Ct. 1022]; *California* v. *Zook* (1949) 336 U.S. 725, 729 and 733 [93 L.Ed. 1005, 1009 and 1011, 69 S.Ct. 841]; *Bus Employees* v. *Wisconsin Board* (1951) 340 U.S. 383, 399 [95 L.Ed. 364, 378, 71 S.Ct. 359, 22 A.L.R.2d 874]; *Napier* v. *Atlantic Coast Line R.R.* (1926) 272 U.S. 605, 613 [71 L.Ed. 432, 439, 47 S.Ct. 207]; *McDermott* v. *Wisconsin* (1913) 228 U.S. 115, 131-132 and 137 [57 L.Ed. 754, 765-766 and 768, 33 S.Ct. 431]; *Walling* v. *Michigan* (1886) 116 U.S. 446, 455-458 [29 L.Ed. 691, 694-695, 6 S.Ct. 454]; and *People* v. *Conklin* (1974) 11 Cal.3d 648, 653 [114 Cal.Rptr. 241, 522 P.2d 1049].) More specifically he asserts that the state import law is invalid by analogy to the Mann Act (former 36 Stat. 825-827; see 18 U.S.C.A. § 2421) which prohibits the transportation of women in interstate commerce for immoral purposes (see *Hoke* v. *United States* (1913) 227 U.S. 308, 320-323 [57 L.Ed. 523, 526-528, 33 S.Ct. 281]). In Montana and Louisana it has been held that the federal law preempted and rendered invalid state laws governing the same offense. (See *Ex parte Anderson* (1951) 125 Mont. 331, 334 [238 P.2d 910, 912-913]. Cf. *In re Squires* (1945) 114 Vt. 285, 287-292 [44 A.2d 133, 135-137, 161 A.L.R. 349]; and *Sisemore* v. *State* (1918) 135 Ark. 179, 182-183 [204 S.W. 626, 627.] Note also *Ledcke* v. *State* (Ind. 1973) 296 N.E.2d 412, 419-420; and *In re Belsha* (1973) 73 Misc.2d 720, 721 [343 N.Y.S.2d 481, 483].)

The authorities cited above and others indicate that in many situations the state regulatory law will be allowed to stand when both restrictions can be enforced without impairing federal superintendence of the field. (See *Florida Avocado Growers* v. *Paul, supra,* 373 U.S. 132, 141-142 [10 L.Ed.2d 248, 256-257]; *Colorado Comm'n.* v. *Continental, supra,* 372 U.S. 714, 722-725 [10 L.Ed.2d 84, 90-92]; *California* v. *Zook, supra,* 336 U.S. 725, 737-738 [93 L.Ed. 1005, 1013-1014]; *Napier* v. *Atlantic Coast Line R.R., supra,* 272 U.S. 605, 611 [71 L.Ed. 432, 438]; *McDermott* v. *Wisconsin, supra,* 228 U.S. 115, 131; and *People* v. *Conklin, supra,* 11 Cal.3d 648, 655-661.)

Secondly defendant points to the express provisions of the federal law

which indicates that nothing was intended to be left to the states with respect to the control of imports into the United States. Section 952 of title 21, United States Code, was enacted as part of subchapter II of the Comprehensive Drug Abuse Prevention and Control Act of 1970. The law consists of two subchapters: subchapter I entitled "Control and Enforcement" and subchapter II, entitled "Import and Export." The first subchapter contains section 903 which reads: "No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any state law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together."

On the other hand, although the inclusion of this provision in one subchapter and its exclusion in another might well indicate Congress' intent that the provisions of section 903 not apply to subchapter II, this is not necessarily the case. The Comprehensive Drug Abuse Prevention and Control Act of 1970 originated in the house. (See U.S. Code Cong. & Admin. News, p. 4566.) Subchapter I on control and enforcement was referred to the Committee on Interstate and Foreign Commerce while subchapter II on import and export was referred to the Committee on Ways and Means. (U.S. Code Cong. & Admin. News, pp. 4566-4568.) When the two subchapters were combined, Congress included section 965 which provided that certain parts of subchapter I would apply to the operation of subchapter II. This section provides in pertinent part: "Part E of subchapter I of this chapter [which includes § 903, *supra*] shall apply with respect . . . to violations of this subchapter, to the same extent that such part applies . . . to violations of subchapter I of this chapter. . . ." It is therefore arguable that the criminal penalties imposed by section 952 of subchapter II are not intended "to occupy the field in which that provision operates . . . to the exclusion of any State law on the same subject matter . . . unless there is a positive conflict. . . ." Moreover, in *California* v. *Zook, supra*, the court observed: "That Congress has specifically saved state laws in some instances . . . indicates no general policy save clarity." (336 U.S. at p. 732 [93 L.Ed. at p. 1011].)

Finally, he asserts that the highest court in the land and the Supreme Court of this state have by omission recognized that the state has no right to penalize the importation of contraband. In *In re De La O* (1963) 59 Cal. 2d 128 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705], the court quoted with approval as follows: "Yet in that decision [*Robinson* v. *Cali-*

*fornia*, 370 U.S. 660 (8 L.Ed.2d 758, 82 S.Ct. 1417)] (at p. 1419 of 82 S.Ct.) the high court recognized 'The broad power of a State to regulate the narcotic drugs traffic *within its borders*' (italics added), and observed that 'Such regulation, it can be assumed, could take a variety of valid forms. A State might impose criminal sanctions, for example, against the unauthorized manufacture, prescription, sale, purchase, or possession of narcotics within its borders." (59 Cal.2d at p. 135.) Of course, insofar as the ultimate delivery of the hashish and its receipt occurred at the address on the parcel there was traffic within the borders of this state.

It is unnecessary to resolve or apply the conflicting principles noted above or to determine the constitutionality of the prohibition against imports contained in the state statute. It suffices to demonstrate that neither the filing of the charge nor the ruling of the trial court constituted an improper act which would invalidate the plea to another count. In *Brady* v. *United States, supra,* the court observed, ". . . absent misrepresentation or other impermissible conduct by state agents, cf. *Von Molktke* v. *Gillies,* 332 U.S. 708 (1948), a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." (397 U.S. 742, 757 [25 L.Ed.2d 747, 761].) In *McMann* v. *Richardson, supra,* the similar concept was expressed as follows: "It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." (397 U.S. 759, 774 [25 L.Ed.2d 763, 775].)

The order admitting defendant to probation is affirmed.

Molinari, P. J., and Elkington, J., concurred.